**Case Nos. 24-5212; 24-5751**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ZUNUM AERO, INC.,

*Plaintiff, Counter-Defendant, and Appellant,*

v.

THE BOEING COMPANY; BOEING HORIZONX VENTURES, LLC,

*Defendants, Counter-Claimants, and Appellees.*

Appeal from the United States District Court
for the Western District of Washington, No. 2:21-cv-00896
The Honorable James L. Robart

## SUPPLEMENTAL BRIEF ADDRESSING QUESTIONS POSED IN COURT'S DECEMBER 11, 2025 ORDER

Brad D. Brian
MUNGER, TOLLES & OLSON LLP
350 S Grand Ave, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Brad.Brian@mto.com

Miriam Kim
MUNGER, TOLLES & OLSON LLP
560 Mission St, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Miriam.Kim@mto.com

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Jeremy Kreisberg
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave NW
Suite 500E
Washington, DC 20001
Telephone: (202) 220-1000
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Jeremy.Kreisberg@mto.com

*Counsel for Defendants, Counter-Claimants, and Appellees*
(additional counsel on inside cover)

John C. Hueston, Esq.
Moez M. Kaba, Esq.
Yegor Fursevich, Esq.
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825
Jhueston@hueston.com
Mkaba@hueston.com
Yfursevich@hueston.com

David A. Perez, Esq.
Susan E. Foster, Esq.
PERKINS COIE LLP
1201 Third Avenue
Suite 4900
Seattle, WA 98101
Telephone: (206) 359-8000
Dperez@perkinscoie.com
Sfoster@perkinscoie.com

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

I.      NINTH CIRCUIT PRECEDENT APPLIES AND MAKES CLEAR THAT BOEING'S COUNTERCLAIMS WERE COMPULSORY ...............3

        A.    Ninth Circuit Law Determines Whether This Court Has Appellate Jurisdiction.............................................................................3

        B.    It Is Clear Under Ninth Circuit Law That This Court Lacks Jurisdiction ...............................................................................13

        C.    Even If Federal Circuit Law Applied, This Court Would Still Lack Jurisdiction .................................................................15

II.     THIS COURT HAS DISCRETION TO TRANSFER THIS CASE TO THE FEDERAL CIRCUIT .........................................................................16

CONCLUSION ...................................................................................................18

CERTIFICATE OF COMPLIANCE...................................................................20

CERTIFICATE OF SERVICE ...........................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*ABS Glob. v. Inguran*,
    914 F.3d 1054 (7th Cir. 2019) ...............................................................15

*Amity Rubberized Pen v. Mkt. Quest Grp.*,
    793 F.3d 991 (9th Cir. 2015) ................................................3, 4, 16, 17

*Ares Trading v. Dyax*,
    114 F.4th 123 (3d Cir. 2024) ..............................................................7, 8

*Arlington Indus. v. Bridgeport Fittings*,
    759 F.3d 1333 (Fed. Cir. 2014) .............................................................11

*In re Arunachalam*,
    812 F.3d 290 (3d Cir. 2016) ...................................................................8

*In re BBC Int'l*,
    99 F.3d 811 (7th Cir. 1996) ....................................................................8

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989)...............................................................................13

*Cannon v. Watermark Ret. Communities*,
    45 F.4th 137 (D.C. Cir. 2022).........................................................10, 11

*Chandler v. Phoenix Servs.*,
    1 F.4th 1013 (Fed. Cir. 2021) .................................................................7

*Christianson v. Colt Indus.*,
    486 U.S. 800 (1988)........................................................................7, 9, 10

*Clark v. Busey*,
    959 F.2d 808 (9th Cir. 1992) .................................................................17

*Fraunhofer-Gesellschaft zur Forderung der angewandten Forschung*
    *E.V. v. Sirius XM Radio*,
    59 F.4th 1319 (D.C. Cir. 2023)...............................................................9

*Gopher Media v. Melone*,
154 F.4th 696 (9th Cir. 2025) (en banc) ................................................................6

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) ........................................................................3, 4

*Honeywell International v. OPTO Electronics*,
135 F.4th 170 (4th Cir. 2025) ......................................................................8, 12

*Int'l Elec. Tech. v. Hughes Aircraft*,
476 F.3d 1329 (Fed. Cir. 2007) ...........................................................................6

*IQE PLC v. Newport Fab*,
2023 WL 10946752 (9th Cir. Oct. 30, 2023) ...............................................4, 5, 6

*IQE PLC v. Newport Fab*,
155 F.4th 1370 (Fed. Cir. 2025) .........................................................................6

*Island Industries v. Sigma Corp.*,
151 F.4th 1003 (9th Cir. 2025) ......................................................................4, 5

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) .............................................................................6

*Lights of Am. v. U.S. Dist. Ct.*,
130 F.3d 1369 (9th Cir. 1997) .............................................................................4

*MedImmune v. Genentech*,
549 U.S. 118 (2007)............................................................................................14

*Nobelpharma AB v. Implant Innovations*,
141 F.3d 1059 (Fed. Cir. 1998) .........................................................................12

*North Star Alaska v. United States*,
14 F.3d 36 (9th Cir. 1994) ...................................................................................4

*In re Pegasus Gold*,
394 F.3d 1189 (9th Cir. 2005) ......................................................................13, 14

*In re Rearden*,
841 F.3d 1327 (Fed. Cir. 2016) .........................................................................15

*Teradata v. SAP SE*,
　2023 WL 4882885 (Fed. Cir. 2023) ...................................................15

*United States v. Hansen*,
　599 U.S. 762 (2023).........................................................................12

*United States v. Universal Fruits & Vegetables*,
　370 F.3d 829 (9th Cir. 2004) ............................................................5

*USPPS v. Avery Dennison*,
　647 F.3d 274 (5th Cir. 2011) .........................................................6, 7

*Vermont v. MPHJ Tech. Investments*,
　803 F.3d 635 (Fed. Cir. 2015) .........................................................11

*Xitronix v. KLA-Tencor*,
　916 F.3d 429 (5th Cir. 2019) .........................................................7, 10

**FEDERAL STATUTES**

28 U.S.C. § 1295(a)(1).....................................................4, 11, 12, 13, 17

28 U.S.C. § 1631 ..........................................................................16, 18

28 U.S.C. § 2201(a) ...........................................................................14

**FEDERAL RULES**

Fed. R. App. P. 4(a)(1)(A) ..................................................................17

Fed. R. Civ. P. 13 .........................................................................12, 13

**OTHER AUTHORITIES**

6 Fed. Prac. & Proc. Civ. § 1410.1 ...................................................15, 16

## INTRODUCTION

This Court has ordered the parties to address two questions related to its appellate jurisdiction: "(1) whether transfer to the Federal Circuit is appropriate, including whether the Federal Circuit has subject matter jurisdiction over this appeal; and (2) whether this circuit's analysis of whether the Federal Circuit has exclusive jurisdiction over this appeal requires consideration of the Federal Circuit's jurisdictional jurisprudence." Dec. 11, 2025 Order. Boeing addresses those questions in reverse order.

To begin, this Court applies its own precedent—not the Federal Circuit's—to determine whether it has appellate jurisdiction. In case after case, this Court has relied on its own precedents in discharging its obligation to act only within the limits of its jurisdiction—including in cases that address whether an appeal lies exclusively within the Federal Circuit's patent-based jurisdiction. Other circuits have likewise made clear that they are not bound by Federal Circuit precedent in such cases, meaning that this Court could not decide otherwise without creating a circuit disagreement. And any doubt is eliminated by Supreme Court precedent, which requires courts to resolve jurisdictional disputes between the Federal Circuit and regional circuits *not* by requiring deference to Federal Circuit precedent, but instead by requiring rigorous application of law-of-the-case doctrine. There is no reason to depart from the consensus rule here.

- 1 -

Application of Ninth Circuit precedent makes this case particularly straightforward—although the same result would obtain under Federal Circuit precedent. The Federal Circuit has exclusive jurisdiction whenever a party has asserted a "compulsory counterclaim" that "aris[es] under" federal patent law. Boeing's inventorship counterclaims indisputably arise under federal patent law, *see* Petition.8-9; Opp.5, so the only question is whether the counterclaims were compulsory. Under Ninth Circuit precedent, they were. At minimum, Zunum's misappropriation claim activated Boeing's legal right to file its declaratory judgment counterclaims, as the district court below held in an unchallenged decision. Under established Ninth Circuit precedent, that makes the counterclaims compulsory. But even if Federal Circuit precedent applied, the counterclaims would still be compulsory because they address the inventorship of the very patents that Zunum's misappropriation claim called into question.

All that remains is this Court's first query: whether transfer to the Federal Circuit is appropriate. In Boeing's view, it is. This case meets the precondition for transfer because the Federal Circuit would have had jurisdiction over the appeal when it was filed. This Court thus has discretion to transfer the case if it determines that such a transfer is in the interest of justice. This Court may find that standard satisfied here because Zunum's appeal is not frivolous and nothing indicates that it was filed in bad faith.

- 2 -

This Court should hold under Ninth Circuit precedent that this case falls within the Federal Circuit's exclusive jurisdiction and, if the Court concludes that a transfer is in the interest of justice, should transfer the appeal to that court.

## ARGUMENT

### I. NINTH CIRCUIT PRECEDENT APPLIES AND MAKES CLEAR THAT BOEING'S COUNTERCLAIMS WERE COMPULSORY

Case law from the Supreme Court, this Court, and other circuits dictates that this Circuit's precedent, rather than the Federal Circuit's precedent, controls whether the counterclaims below were compulsory. Under this Circuit's precedent, it is clear that the counterclaims were compulsory, which means that appellate jurisdiction lies exclusively in the Federal Circuit. Petition.6-8; Reply.3-4. But even if this Court were to apply Federal Circuit precedent, the result would be the same.

### A. Ninth Circuit Law Determines Whether This Court Has Appellate Jurisdiction

**1.** This Court applies its own law to determine whether it has appellate jurisdiction. It is fundamental in this Circuit that "Circuit law . . . binds all courts within [the] circuit, including the court of appeals itself." *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). That principle applies to jurisdictional questions, as it is the "obligation" of this Court to ensure that it does not "act beyond the limits of [its] own jurisdiction." *Amity Rubberized Pen v. Mkt. Quest Grp.*, 793 F.3d 991, 994 (9th Cir. 2015). This Court may look to case law of another circuit

- 3 -

for persuasive authority, *see Hart*, 266 F.3d at 1169-70, but another circuit's precedent cannot enlarge this Court's jurisdiction beyond the limits that it has recognized.

This Court therefore looks to its own precedent to determine appellate jurisdiction—including where that determination relates to Federal Circuit jurisdiction. It has done so when determining whether a mandamus action must go to the Federal Circuit. *See Lights of Am. v. U.S. Dist. Ct.*, 130 F.3d 1369, 1370 (9th Cir. 1997). It has done so when determining whether the Tucker Act diverts jurisdiction to the Court of Federal Claims and the Federal Circuit. *See, e.g.*, *North Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994). And it has done so in cases like this one—where this Court must determine whether a case falls within the Federal Circuit's exclusive patent-law jurisdiction under 28 U.S.C. § 1295(a)(1). *See, e.g.*, *Amity*, 793 F.3d at 994 (applying Ninth Circuit precedent for arising-under jurisdiction); *IQE PLC v. Newport Fab*, 2023 WL 10946752, at *1 (9th Cir. Oct. 30, 2023) ("*This court* has previously held that such a claim is created by federal patent law.") (emphasis added).

Two recent cases are instructive. First, in *Island Industries v. Sigma Corp.*, 151 F.4th 1003 (9th Cir. 2025), this Court considered whether it had jurisdiction in a relator's False Claims Act ("FCA") case seeking to recover customs duties, despite statutes providing that certain customs cases must be "initiated in the

[Court of International Trade ("CIT")] and then appealed" to "the Federal Circuit." *Id.* at 1013. To answer that question, this Court reviewed *United States v. Universal Fruits & Vegetables*, 370 F.3d 829 (9th Cir. 2004), this Court's own precedent, which "held that an FCA suit filed by the United States against a defendant alleged to have evaded paying customs duties must be brought in the CIT." *Island Indus.*, 151 F.4th at 1013. In considering the salience of that precedent to *Island Industries*, this Court recognized that "[u]pon transfer" of *Universal Fruits* to the CIT, "the CIT disagreed and held that it did not in fact have jurisdiction." *Id.* at 1013 n.6. But, critically, this Court held that the CIT's contrary view *did not control*: "No matter how persuasive the CIT's reasoning, we have no authority here to overrule an earlier decision of our court." *Id.*[1]

The second case, *IQE v. Newport Fab*, 2023 WL 10946752 (9th Cir. Oct. 30, 2023), is similar. In that case, like this one, the question was whether this Court had jurisdiction over a trade-secret and patent-inventorship dispute. When this Court assessed its own jurisdiction over that interlocutory appeal, which challenged the denial of an anti-SLAPP motion, the Court explained that *under its own law* the order at issue was an immediately appealable collateral order. *See id.*

---

[1] The CIT's reasoning was not tested by the Federal Circuit because the government did not pursue an appeal in *Universal Fruits*. As for *Island Industries*, this Court retained jurisdiction because the underlying action was filed by a relator, not the government. *Id.* at 1013.

at *1.[2] By contrast, after the case was transferred to the Federal Circuit (because the case arose under federal patent law), the Federal Circuit applied *its own law* to decide the question of immediate appealability. *See IQE PLC v. Newport Fab*, 155 F.4th 1370, 1376 & n.3 (Fed. Cir. 2025) (deciding the issue "as a matter of Federal Circuit law" and explaining that it was "not bound by the Ninth Circuit's case law on this matter").

The lesson of these cases is clear: although the Federal Circuit "appl[ies]" its "own law, rather than regional circuit law, to questions relating to [its] own appellate jurisdiction," *Int'l Elec. Tech. v. Hughes Aircraft*, 476 F.3d 1329, 1330 (Fed. Cir. 2007), this Court applies its own law when determining the extent of *this* Court's appellate jurisdiction.

**2.** This Court's sister circuits have applied the same principle in cases indistinguishable from this one. Applying Federal Circuit law here would depart from those decisions.

The Fifth Circuit, for instance, has been crystal clear on this point: in "evaluating" whether an appeal falls under the Federal Circuit's exclusive patent-

---

[2] This Court cited *Langer v. Kiser*, 57 F.4th 1085, 1104 (9th Cir. 2023), for the proposition that the "denial of an anti-SLAPP motion is an immediately appealable final decision." This Court has since held otherwise, *see Gopher Media v. Melone*, 154 F.4th 696, 699 (9th Cir. 2025) (en banc), but that change in law is not relevant to the issues presented here.

- 6 -

based jurisdiction, the Fifth Circuit "frequently look[s] to the jurisdictional decisions of the Federal Circuit," but it is "*not bound by them*." *USPPS v. Avery Dennison*, 647 F.3d 274, 278 (5th Cir. 2011) (emphasis added). That is not mere dicta; the Fifth Circuit has applied that rule to substantive effect, expressly diverging from Federal Circuit precedent when it sees fit. Specifically, in *Xitronix v. KLA-Tencor*, 916 F.3d 429 (5th Cir. 2019), after the Federal Circuit held that it lacked jurisdiction over a *Walker Process* suit and transferred it, the Fifth Circuit found the Federal Circuit's decision "implausible" and transferred it back. *Id.* at 435.[3] The Fifth Circuit diverged from the Federal Circuit even though the dispositive issue was whether the suit arose under federal patent law—a question that the Federal Circuit decides under Federal Circuit law. *See Chandler v. Phoenix Servs.*, 1 F.4th 1013, 1018 (Fed. Cir. 2021) (Federal Circuit law "governs" that question in that circuit). It was permissible for the Fifth Circuit to do so only because Fifth Circuit precedent, and not Federal Circuit precedent, governed that question in the Fifth Circuit.

Other courts of appeals have likewise applied their own precedent in cases indistinguishable from this one. In *Ares Trading v. Dyax*, 114 F.4th 123 (3d Cir.

---

[3] The Fifth Circuit's finding of implausibility meant that the Federal Circuit's decision need not even be followed as law of the case. *See Christianson v. Colt Indus.*, 486 U.S. 800, 819 (1988).

2024), the critical question was the same as here: whether a patent-law counterclaim was compulsory and thus triggered the Federal Circuit's exclusive jurisdiction. To answer that question, the Third Circuit expressly applied Third Circuit law. *See id.* at 135-36 (applying the "standard" to determine whether a counterclaim is compulsory that the Third Circuit "introduced" decades prior). The court did not even cite the Federal Circuit's compulsoriness tests. The same issue arose in *Honeywell International v. OPTO Electronics*, 135 F.4th 170 (4th Cir. 2025)—another case in which Federal Circuit jurisdiction depended on whether patent-law counterclaims were compulsory. *See id.* at 177. There, too, the Fourth Circuit set forth its own "inquiries" for determining whether a counterclaim is compulsory, not the Federal Circuit's. *See id.* at 177 n.2.[4]

Other cases reinforce that each circuit applies its own precedent, even when the question bears on Federal Circuit jurisdiction. For instance, several circuits have determined as a matter of regional circuit law that the Federal Circuit has exclusive mandamus jurisdiction in patent cases. *See In re BBC Int'l*, 99 F.3d 811, 813 (7th Cir. 1996); *In re Arunachalam*, 812 F.3d 290, 292–93 (3d Cir. 2016). Several circuits have likewise determined—again, under regional circuit law—that

---

[4] The court ultimately saw no need to apply those inquiries because "the shared subject matter giving rise to the parties' claims is evident." *Honeywell*, 135 F.4th at 177 n.2.

the Federal Circuit's "exclusive jurisdiction encompasses appeals of discovery orders ancillary to a patent suit." *Fraunhofer-Gesellschaft zur Forderung der angewandten Forschung E.V. v. Sirius XM Radio*, 59 F.4th 1319, 1323 (D.C. Cir. 2023) (citing cases).

The law beyond this Circuit is the same as the law within it: questions bearing on the Federal Circuit's exclusive jurisdiction are governed by the precedent of the circuit addressing the question.

**3.** The Supreme Court's decision in *Christianson v. Colt Industries*, 486 U.S. 800 (1988), eliminates any doubt. That case concerned a "jurisdictional battle" between the Federal Circuit and the Seventh Circuit over whether the appeal fit within the Federal Circuit's exclusive patent jurisdiction. *Id.* at 803. The Federal Circuit answered in the negative and transferred the appeal to the Seventh Circuit; the Seventh Circuit disagreed and sent it back. *Id.* at 806-07. The Supreme Court's answer to the potential for a "perpetual game of jurisdictional ping-pong" was, critically, *not* to vest primacy in Federal Circuit law and thereby allow the Federal Circuit's decisions to dictate the answer. *Id.* at 818. Instead, the Court instructed that "courts of appeals should" promote prompt resolution of jurisdictional issues by "adhering strictly to principles of law of the case" and accepting the decision of the transferor court in all but "exceptional" cases where the transferee court cannot find that decision "plausible." *Id.* at 819.

- 9 -

That conclusion matters for two reasons. First, it demonstrates that the right answer here *must* be for Ninth Circuit law to apply. The essential premise of *Christianson* is that sometimes the Federal Circuit and a regional court of appeals will disagree over whether an appeal falls within the Federal Circuit's exclusive jurisdiction—including (as in *Christianson*, and later in *Xitronix*) *where the Federal Circuit goes first*. Such disagreement is possible only if regional courts of appeals apply their own understanding of the law and are not always bound to accept the Federal Circuit's prior decisions. Second, the Supreme Court's emphasis on law-of-the-case principles guarantees that a holding by this Court that Ninth Circuit law applies will not create some kind of jurisdictional limbo, as safeguards to prevent that problem already exist. *Id.* at 818-19.

**4.** By contrast, a rule that required this Court to privilege Federal Circuit precedent over its own would produce an administrative nightmare. It is essential to the "workability of the hierarchical system of precedent" that district courts not "be bound by competing opinions of two different courts of appeals . . . on a single issue." *Cannon v. Watermark Ret. Communities*, 45 F.4th 137, 149 (D.C. Cir. 2022); *see id.* (emphasizing the ordinary rule that "binding precedent 'for the district courts within a circuit' is set 'only by the court of appeals for that circuit'" (citation omitted)). Yet that would be precisely the result for district courts in this Circuit if Ninth Circuit law does not apply here. Of course, under any approach

- 10 -

Ninth Circuit precedent will apply in this Circuit to the compulsoriness question in the mine run of cases—ones that do not touch on Federal Circuit jurisdiction. But a rule that suddenly requires a switch in the governing law when Federal Circuit jurisdiction might be at play would throw district courts into disarray in patent-related cases, forcing a case within a case over which circuit's law the district court ought to apply to the compulsoriness question. At a minimum, this Court should not assume that Congress displaced the traditional rule that each circuit's law applies within its own circuit "without clearly so stating." *Id.* Section 1295(a)(1) does not come close to providing such a clear statement.

**5.** Finally, this Court's obligation to apply its own law is not diminished by the Federal Circuit's rule that it applies *its* own law—and not the law of the relevant regional circuit—when deciding issues that affect the scope of its jurisdiction. *See, e.g.*, *Arlington Indus. v. Bridgeport Fittings*, 759 F.3d 1333, 1336 (Fed. Cir. 2014). In applying that rule in the context of Section 1295(a)(1), the Federal Circuit has held that its own law governs what constitutes a compulsory counterclaim. *Vermont v. MPHJ Tech. Investments*, 803 F.3d 635, 644 n.2 (Fed. Cir. 2015); *but see id.* (stating that the Federal Circuit "has not yet adopted a body of law governing what constitutes a compulsory counterclaim" and thus "turn[ing] to Second Circuit law for guidance" in a case arising from a district court in that circuit). That holding does not imply, much less say, that Federal

- 11 -

Circuit law should control the compulsory-counterclaim analysis in *other circuits*; rather, the Federal Circuit was merely stating that, because its jurisdiction was implicated, it would not follow its usual practice of applying regional-circuit law to decide issues of procedure. *See, e.g.*, *Nobelpharma AB v. Implant Innovations*, 141 F.3d 1059, 1067 (Fed. Cir. 1998).

That statement in no way demands that this Court follow the law of the Federal Circuit. As already explained, that approach would be at odds with both binding and persuasive precedent. And the Federal Circuit's undoubted patent expertise gives it no superior ability to interpret Federal Rule of Civil Procedure 13(a), which gives substance to the Section 1295(a)(1) inquiry. *See Honeywell*, 135 F.4th at 176 (recognizing that Congress's use of the term "compulsory counterclaim" in the Federal Circuit's jurisdictional statute "incorporated the term's 'well-established legal meaning[]—and the cluster of ideas [] attached to' it—from Rule 13(a) of the Federal Rules of Civil Procedure") (quoting *United States v. Hansen*, 599 U.S. 762, 774 (2023)). To the contrary, this Court is just as qualified as the Federal Circuit to determine which claims arise out of the same transaction or occurrence, and this Court has its own established body of law on that point that fits all cases—regardless of whether they present a Section 1295(a)(1) jurisdictional question. At bottom, applying Federal Circuit precedent to determine compulsory-counterclaim law would do nothing to advance

- 12 -

"nationwide uniformity in patent law." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989) (citation omitted).

### B.    It Is Clear Under Ninth Circuit Law That This Court Lacks Jurisdiction

Under this Court's Rule 13 law, which governs the Section 1295(a)(1) compulsoriness inquiry, the counterclaims below were indisputably compulsory. Boeing will not repeat all that it has already said on that issue, *see* Petition.6-8; Reply.3-4, but will emphasize one dispositive point.

This Court's case law establishes that a counterclaim is compulsory where "the aggregate core of facts" underlying the plaintiff's claim "activates additional legal rights otherwise dormant in the defendant." *In re Pegasus Gold*, 394 F.3d 1189, 1196 (9th Cir. 2005). That is an independent basis for determining that a counterclaim is compulsory, separate and apart from whether "the same operative facts serve as the basis of both claims." *Id.*

Both bases exist. After all, Zunum effectively acknowledged that Boeing's counterclaims were based on the "same operative facts" as Zunum's misappropriation claim. *See* D.Ct.Dkt.32, at 2 (Zunum arguing that its claim put "inventorship" of Boeing's patents "at issue"). And it is especially clear that Zunum's misappropriation claim "activate[d] additional legal rights otherwise dormant" in Boeing. *Pegasus*, 394 F.3d at 1196. Before Zunum asserted the misappropriation claim, Boeing had no legal right to bring its declaratory-judgment

- 13 -

counterclaims because there was no "actual controversy" as to patent inventorship at that time. 28 U.S.C. § 2201(a) (Declaratory Judgment Act); *see MedImmune v. Genentech*, 549 U.S. 118, 127 (2007) (requiring that the dispute be "real and substantial" and "definite and concrete"). Zunum's misappropriation claim changed that state of affairs by alleging that "Boeing stole [Zunum's] purported trade secrets and confidential information and then used that information to obtain" two particular "patents." D.Ct.Dkt.114, at 9. Those allegations were a necessary precondition to Boeing's declaratory judgment counterclaims, thus "activat[ing]" Boeing's "otherwise dormant" right to file them. *Pegasus*, 394 F.3d at 1196.

That is precisely what the district court held below—as Zunum has never challenged. The district court recounted the allegations in Zunum's first amended complaint that Boeing used misappropriated information to "obtain" its patents. D.Ct.Dkt.114, at 9. It noted that Zunum responded to Boeing's interrogatories by "stat[ing] under oath that Boeing had 'misused' Zunum's information, including by 'deriv[ing]'" particular "patents from that information." *Id.* And it explained that Zunum's operative second amended complaint "contain[s] the same allegations" concerning patent misappropriation that Zunum included in its first amended complaint and later explained in its interrogatory responses. *Id.* at 9 n.9. That all made "clear" to the court that Zunum "would prove misappropriation, at least in part, by challenging the inventorship" of Boeing patents. *Id.* at 10. "In light of"

- 14 -

that determination, the court "conclude[d] that the inventorship" of Boeing's "patents is a 'real and substantial' and 'definite and concrete' controversy," giving rise to proper declaratory judgment counterclaims. *Id*. (citation omitted).

The district court's unchallenged decision makes this case a straightforward example of one involving a compulsory patent-law counterclaim. Application of this Court's precedent is thus determinative.

### C. Even If Federal Circuit Law Applied, This Court Would Still Lack Jurisdiction

Finally, this Court could opt to avoid the issue of which circuit's law applies—or, at least, note that the issue is not dispositive—because the counterclaims below were compulsory under Federal Circuit law as well. *See ABS Glob. v. Inguran*, 914 F.3d 1054, 1064 (7th Cir. 2019) (finding difference between the Seventh and Federal Circuit standards "immaterial").

In the Federal Circuit, a counterclaim to resolve the inventorship of the "very patents" at issue in the plaintiff's misappropriation claim is compulsory. *In re Rearden*, 841 F.3d 1327, 1333 (Fed. Cir. 2016); *see Teradata v. SAP SE*, 2023 WL 4882885, at *11-12 (Fed. Cir. 2023) (distinguishing between claims involving the "same subject matter" and claims in which "different parties' different products" are at issue); 6 Fed. Prac. & Proc. Civ. § 1410.1 (Wright & Miller likewise distinguishing between "counterclaim involving the same patent as is involved in the original action" and counterclaim addressing "different patents"

- 15 -

than "underlie the claim"). Boeing's counterclaims here undeniably met that test: they sought a declaration of inventorship as to the same exact patents that Zunum's misappropriation claim had implicated. *See* D.Ct.Dkt.114, at 9. Zunum has never disputed that critical relationship between its misappropriation claim and Boeing's counterclaims—arising from the same patents cited in Zunum's complaint. *E.g.*, D.Ct.Dkt.60, at 89-90. Its attempt to distract from that critical inquiry based on inapposite dicta fails. *See* Reply.6-8.

## II. THIS COURT HAS DISCRETION TO TRANSFER THIS CASE TO THE FEDERAL CIRCUIT

Where, as here, an appeal is pending in a court of appeals that lacks jurisdiction, that "court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. Accordingly, this Court must transfer this appeal if (1) the Federal Circuit would have had subject-matter jurisdiction at the time the appeal was filed; and (2) transfer is in the interest of justice. *Amity*, 793 F.3d at 995.

In Boeing's view, transfer is appropriate here—although this Court has discretion to dismiss the appeal for lack of jurisdiction. First, for the reasons discussed above and in the rehearing papers, the Federal Circuit would have had subject-matter jurisdiction—indeed, exclusive jurisdiction—over this appeal at the time it was filed, and Zunum should have filed its appeal in that court. Boeing's

- 16 -

compulsory counterclaims brought the case within the scope of the Federal Circuit's exclusive jurisdiction. 28 U.S.C. § 1295(a)(1); *see* pp.3-16, *supra*. All other requirements for appellate jurisdiction also are satisfied: the district court entered final judgment, 1-ER-2-3, 1-ER-6, and Zunum filed timely notices of appeal, D.Ct.Dkt.746; D.Ct.Dkt.756; Fed. R. App. Proc. 4(a)(1)(A).

Second, this Court "has taken a broad view" of when transfer to another court of appeals is in the interest of justice. *Amity*, 793 F.3d at 996. Generally, transfer is appropriate "unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith"—for instance, when the appeal has "no colorable claim for relief." *Id.* (quoting *Clark v. Busey*, 959 F.2d 808, 814 (9th Cir. 1992)). It is of course Boeing's position, as explained in its merits brief, that Zunum's arguments for displacing the district court's judgment should be rejected. But there is a great deal of difference between meritless arguments and frivolous ones, and Boeing has never accused Zunum's appeal of failing to clear that lower bar.

There also is nothing to indicate that Zunum filed its appeal in this Court, and not the Federal Circuit, in bad faith. Although there were district-court proceedings here strongly indicating that the Federal Circuit's jurisdiction is (at minimum) at play, nothing indicates that Zunum's misfiling "was anything other than an honest mistake." *Amity*, 793 F.3d at 997.

- 17 -

If this Court were to transfer the appeal rather than dismiss it, Zunum would have a full opportunity in the Federal Circuit to make arguments for reversal. And the Federal Circuit would decide the appeal on its merits, with the freedom to reach the same or different conclusions than this Court previously reached. That is exactly the process that Congress envisioned when it enacted Section 1631 in contemplation of situations like this one. *See* 28 U.S.C. § 1631 (after transfer, "the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred").

## CONCLUSION

This Court should rule that it lacks jurisdiction over this appeal and that the Federal Circuit has exclusive jurisdiction and, if the Court concludes that transfer is in the interest of justice, should transfer this appeal to the Federal Circuit.

- 19 -

Respectfully submitted,

Dated: January 5, 2026 **MUNGER, TOLLES & OLSON LLP**

By: */s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.

*Counsel for Defendants, Counter-Claimants, and Appellees The Boeing Company and Boeing HorizonX Ventures, LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing supplemental brief is prepared in a format, typeface, and type style that complies with Federal Rule of Appellate Procedure 32(a)(4)-(6) and contains 4,194 words.

Dated:  January 5, 2026                    */s/ Donald B. Verrilli, Jr.*
                                           Donald B. Verrilli, Jr.

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using ACMS.

Dated:  January 5, 2026

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.

- 21 -