**Case Nos. 24-5212; 24-5751**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

ZUNUM AERO, INC.,

*Plaintiff, Counter-Defendant, and Appellant*,

v.

THE BOEING COMPANY; BOEING HORIZONX VENTURES, LLC,

*Defendants, Counter-Claimants, and Appellees*.

---

Appeal from the United States District Court
for the Western District of Washington, No. 2:21-cv-00896
The Honorable James L. Robart

---

# APPELLEES' PETITION FOR REHEARING EN BANC

---


Brad D. Brian
MUNGER, TOLLES & OLSON LLP
350 S Grand Ave, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Brad.Brian@mto.com

Miriam Kim
MUNGER, TOLLES & OLSON LLP
560 Mission St, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Miriam.Kim@mto.com

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Jeremy Kreisberg
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave NW
Suite 500E
Washington, DC 20001
Telephone: (202) 220-1000
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Jeremy.Kreisberg@mto.com

*Counsel for Defendants, Counter-Claimants, and Appellees*
(additional counsel on inside cover)

John C. Hueston, Esq.
Moez M. Kaba, Esq.
Yegor Fursevich, Esq.
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825
Jhueston@hueston.com
Mkaba@hueston.com
Yfursevich@hueston.com

Susan E. Foster, Esq.
ASHURST PERKINS COIE US LLP
1301 Second Avenue
Suite 4200
Seattle, WA 98101
Telephone: (206) 359-8000
Susan.Foster@ashurstperkins.com

## TABLE OF CONTENTS

**Page**


INTRODUCTION AND RULE 40 STATEMENT .................................................1

BACKGROUND .................................................................................3

A. Legal Background .......................................................................3

B. Factual and Procedural Background ..............................................4

ARGUMENT .....................................................................................8

I. THE PANEL'S JURISDICTIONAL DECISION WARRANTS REHEARING EN BANC .......................................................................8

A. The Panel's Decision Conflicts with Precedent ...............................8

B. The Panel's Decision Errs on an Exceptionally Important Issue ........15

II. THE PANEL'S DECISION STRENGTHENS BOEING'S PENDING PETITION FOR REHEARING EN BANC ...........................................19

CONCLUSION ..................................................................................20

CERTIFICATE OF SERVICE ...............................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**


*Baker v. Gold Seal Liquors*,
417 U.S. 467 (1974)....................................................................................9

*Bull v United States*,
295 U.S. 247 (1935)..................................................................................18

*Cooper v. SSA*,
131 F.4th 995 (9th Cir. 2025) ..................................................................13

*Evans v. United States*,
504 U.S. 255 (1992)..................................................................................16

*In re Gardens Reg'l Hosp. & Med. Ctr.*,
975 F.3d 926 (9th Cir. 2020) ....................................................................18

*Great Lakes Rubber v. Herbert Cooper*,
286 F.2d 631 (3d Cir. 1961) ................................................................2, 14

*Holmes Group v. Vornado Air Circulation Sys.*,
535 U.S. 826 (2002)....................................................................................4

*Hydranautics v. FilmTec*,
70 F.3d 533 (9th Cir. 1995) ..................................................................13, 14

*Mattel v. MGA Ent.*,
705 F.3d 1108 (9th Cir. 2013) ..............................................................2, 12

*Mitchell v. CB Richard Ellis Long Term Disability Plan*,
611 F.3d 1192 (9th Cir. 2010) ..................................................................15

*Moore v. N.Y. Cotton Exch.*,
270 U.S. 593 (1926).....................................................2, 7, 8, 9, 10, 11

*Mosley v. General Motors*,
497 F.2d 1330 (8th Cir. 1974) ..................................................................17

*Painter v. Harvey*,
863 F.2d 329 (4th Cir. 1988) ................................................................2, 14

*Pochiro v. Prudential Insurance*,
827 F.2d 1246 (9th Cir. 1987) ....................................................2, 11, 13, 14, 15

*In re Rearden*,
841 F.3d 1327 (Fed. Cir. 2016) ..................................................................4, 19

*S. Const. v. Pickard*,
371 U.S. 57 (1962)...........................................................................................9

*United Artists v. Masterpiece Productions*,
221 F.2d 213 (2d Cir. 1955) ......................................................................2, 14

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966).........................................................................................6

**FEDERAL STATUTES**

28 U.S.C. § 1295(a)(1)......................................................................................4

28 U.S.C. § 1454(a) ...........................................................................................5

**FEDERAL RULES**

Fed. R. Civ. P. 8(d)(2)......................................................................................18

Fed. R. Civ. P. 13(a)...................................................................................*passim*

Fed. R. Civ. P. 20(a)(1)(A) ...............................................................................17

Fed. R. Civ. P. 20(a)(2)(A) ...............................................................................17

**TREATISES**

6 Fed. Prac. & Proc. Civ. § 1410 (3d ed.)...........................................................16

6 Fed. Prac. & Proc. Civ. § 1419 (3d ed.)...........................................................18

**OTHER AUTHORITIES**

Sigma Law, Group, *Boeing Argued the Wrong Court Heard Its Appeal, and Lost Twice* (Aug. 29, 2026),
https://sigmalawgroup.com/blog/2026-08-29-boeing-zunum-jurisdiction/ ..........................................................................................16

## INTRODUCTION AND RULE 40 STATEMENT

Zunum Aero, Inc. ("Zunum") sued The Boeing Company and HorizonX Ventures (collectively, "Boeing") for misappropriation of trade secrets. Zunum's lead misappropriation argument was that Boeing had derived two patents from Zunum's confidential information. Boeing responded as any responsible defendant would: it brought counterclaims to establish that Boeing, not Zunum, was the sole inventor of Boeing's patents. After all, Rule 13(a) provides that counterclaims are compulsory when they arise out of the same "transaction or occurrence" as the claim, and Zunum's misappropriation claim was the very reason why the inventorship of Boeing's patents was in jeopardy.

A panel of this Court nevertheless decided that Boeing's counterclaims were permissive—a conclusion that allowed the panel to keep jurisdiction over the appeal rather than transfer it to the Federal Circuit, which has exclusive jurisdiction in cases that include compulsory patent-law counterclaims. The panel reached that conclusion by inventing a new rule: whenever a plaintiff pleads multiple theories of liability under the banner of a single claim, a counterclaim is compulsory only if it relates to *every* such theory. Under that rule, the panel deemed Boeing's counterclaims permissive because Zunum pleaded non-patent theories of misappropriation along with its lead patent-derivation theory.

The panel's new rule conflicts with multiple decisions of this Court. It erases this Circuit's longstanding rule that counterclaims are compulsory when a claim "activate[s]" an "otherwise dormant" right to file them, *Mattel v. MGA Ent.*, 705 F.3d 1108, 1110 (9th Cir. 2013)—which is precisely what happened here. And it is irreconcilable with *Pochiro v. Prudential Insurance*, 827 F.2d 1246 (9th Cir. 1987), which would have been decided differently under the panel's approach. Indeed, the concurring judge on the panel recognized that this case may need to "be taken en banc to resolve" an "irreconcilable conflict" in Circuit precedent. App.30 n.4. The panel's new rule also conflicts with Supreme Court precedent, which recognizes that claims share a common "transaction" even when the overlap is only "part[ial]" and there are "additional allegations" in the case, *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926), and with decisions of other circuits.[1]

Even if there were no conflicts, rehearing would still be warranted to correct the panel's erroneous decision on an exceptionally important issue. A century ago, the Supreme Court adopted a flexible and expansive test for compulsory counterclaims to encourage parties to resolve their disputes in a single case. The panel's new rule achieves the opposite end, making it easy for plaintiffs to ensure

---

**1** *E.g.*, *United Artists v. Masterpiece Productions*, 221 F.2d 213 (2d Cir. 1955); *Great Lakes Rubber v. Herbert Cooper*, 286 F.2d 631 (3d Cir. 1961); *Painter v. Harvey*, 863 F.2d 329 (4th Cir. 1988).

that a counterclaim is permissive simply by stuffing multiple theories of liability into a single blunderbuss claim. That shift in the law invites gamesmanship, including where a plaintiff raises a patent-related dispute but wishes to avoid the Federal Circuit, and will yield duplicative litigation by shrinking the preclusive effect of a judgment. It also introduces intractable problems into everyday litigation—undermining the ability of litigants and courts to determine whether counterclaims are compulsory, upending the ordinary symmetry between the test for compulsoriness and the test for supplemental jurisdiction, and throwing into disarray numerous civil-procedure doctrines that use a "transaction or occurrence" test.

When Congress granted the Federal Circuit exclusive jurisdiction over compulsory patent-law counterclaims, it did so against the backdrop of the longstanding flexible interpretation of the "transaction or occurrence" test. The panel has now discarded that interpretation, in defiance of the text of Rule 13, binding precedent, and Congress's design. Only en banc review can restore the necessary order.

## BACKGROUND

### A. Legal Background

The Federal Circuit has long had exclusive jurisdiction over appeals from civil actions involving claims under federal patent law. The Supreme Court

initially limited that jurisdiction to cases with patent-law claims asserted in a "well-pleaded complaint," *Holmes Group v. Vornado Air Circulation Sys.*, 535 U.S. 826, 830 (2002), but Congress responded by amending the law to "broaden" the Federal Circuit's jurisdiction to include cases with patent-based compulsory counterclaims, *In re Rearden*, 841 F.3d 1327, 1331 (Fed. Cir. 2016). That change was intended to promote patent law "uniformity" and "coherence." *Id.*

The operative statute now grants the Federal Circuit "exclusive jurisdiction" whenever "a party has asserted a compulsory counterclaim arising under" federal patent law. 28 U.S.C. § 1295(a)(1).

### B. Factual and Procedural Background

1. A question of patent inventorship is at the heart of this case. Zunum sought to build hybrid-electric airplanes, but the company collapsed when it became clear that Zunum's claimed technological advances were illusory. 13-ER-2971–95; 15-ER-3508. Years later, Zunum sought to pin the blame on its investor, Boeing. Although Boeing never developed a competing product, Zunum filed a lawsuit in state court alleging that Boeing had misappropriated Zunum's trade secrets. Zunum alleged several theories of misappropriation, but—in Zunum's words—its "[f]irst" such theory was that Boeing had "derive[d]" two patents from Zunum's alleged trade secrets. Dkt.1-4, at 3-4. As Zunum explained, that patent-

based misappropriation theory put "at issue" the inventorship of Boeing's patents. Dkt.32, at 2.

Boeing responded by bringing counterclaims to declare that Boeing, not Zunum, was the inventor of the patents that Zunum identified. Dkt.1-2, at 77; Dkt.118, at 78-81. Boeing also removed the case to federal court. *See* 28 U.S.C. § 1454(a).

Zunum twice moved to remand without success. First, Zunum argued that removal occurred too late because the complaint had "clearly" included allegations that "g[ave] rise to" Boeing's "inventorship counterclaim." Dkt.26, at 3, 8. The district court denied remand because removal by one of Boeing's co-defendants was timely. Dkt.36. Second, Zunum argued that Boeing's patent-inventorship counterclaims were nonjusticiable. Dkt.92. The district court rejected that argument, concluding that Zunum had *created* a justiciable controversy by "mak[ing] clear that it would prove misappropriation" by "challenging the inventorship" of Boeing's "patents." Dkt.114, at 7-11. Zunum never challenged those rulings.

At summary judgment, the court resolved the inventorship counterclaims (and several other claims) in Boeing's favor. 9-ER-2214–15; 1-ER-10–11. Zunum's remaining claims, including its non-patent theories of misappropriation, were tried to a jury, which found in favor of Zunum in part and awarded Zunum

over $70 million. 9-ER-2131–40. Boeing moved for post-verdict relief. The district court granted judgment as a matter of law to Boeing because Zunum had "failed to identify any of its alleged trade secrets with sufficient particularity," 1-ER-17, and it conditionally ordered a new trial because the verdict was "against the clear weight of the evidence," 1-ER-5.

2. Zunum appealed to this Court, not the Federal Circuit. A three-judge panel reversed in a memorandum disposition without oral argument. At the panel stage, no party raised appellate jurisdiction.

Boeing then filed a petition for rehearing and/or rehearing en banc, arguing that the panel's decision had erased the requirement for plaintiffs to "precisely" define their alleged trade secrets and improperly reviewed the new-trial grant de novo. CA9.Dkt.65.1; *see* CA9.Dkt.66.1 (Chamber of Commerce amicus brief urging en banc review as to trade-secret particularity). Boeing also argued that this Court lacks appellate jurisdiction because Boeing had brought compulsory patent-law counterclaims. Boeing argued in the alternative that if Boeing's counterclaims were permissive, and thus not part of the same "transaction or occurrence" as Zunum's state-law claims, Fed.R.Civ.P. 13(a)(1)(A), then the district court lacked supplemental jurisdiction over Zunum's claims, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (supplemental jurisdiction requires "common nucleus of operative fact").

The panel ordered supplemental briefing, held oral argument to consider the jurisdictional questions, and issued a published decision denying panel rehearing. The decision holds that the Federal Circuit lacks jurisdiction because Boeing's counterclaims were permissive.

The majority acknowledged that "Zunum's trade secret misappropriation claim established a 'substantial controversy' for Boeing's patent inventorship counterclaims" and thus "activated Boeing's ability to seek a declaratory judgment to establish patent inventorship." App.16. The majority nevertheless held that Boeing's counterclaims were not compulsory because "Zunum had many theories to support its trade secret misappropriation claim that were unrelated to Boeing's patents," and Zunum "prevailed" on one of those theories while Boeing "prevailed on its counterclaims." App.16-17. Moreover, although Zunum itself characterized its patent argument as its "first" claim of misappropriation, the majority found "insufficient factual overlap" between that claim and Boeing's counterclaims because Zunum's patent argument was condensed into two paragraphs of the complaint. App.14-15.

Judge Bade concurred but sharply criticized the majority opinion. She explained that the majority had "abandon[ed] any focus on the text" of Rule 13(a). App.25. She identified a conflict between the majority's narrow interpretation of the compulsory-counterclaim test and the Supreme Court's decision in *Moore v.*

*New York Cotton Exchange*, 270 U.S. 593, 610 (1926). App.26. And she cited multiple respects in which the majority had diverged from this Circuit's precedent, prompting her to opine that "this case" may need to "be taken en banc to resolve" an "irreconcilable conflict." App.30 n.4.

The panel denied only Boeing's petition for panel rehearing. App.25. Boeing's initial petition for rehearing en banc remains pending.

## ARGUMENT

The Court should grant rehearing en banc of the decision denying panel rehearing to ensure a uniform, clear, and correct interpretation of Rule 13's "transaction or occurrence" test. The Court also should grant Boeing's initial petition for rehearing en banc because the panel's jurisdictional decision makes the issues raised in that petition even more urgent.

### I. THE PANEL'S JURISDICTIONAL DECISION WARRANTS REHEARING EN BANC

#### A. The Panel's Decision Conflicts with Precedent

The panel held for the first time that a counterclaim is not compulsory so long as the corresponding claim pleads multiple "theories" of liability, one of which is "unrelated" to the counterclaim. App.16. That holding conflicts with Supreme Court precedent, with precedent of this Court, and with the approach of other circuits.

**1.** ***Supreme Court precedent.*** For the last century, the Supreme Court has directed that the "transaction or occurrence" test for compulsory counterclaims be interpreted "flexibl[y]" and broadly—to "comprehend a series of many occurrences" and embrace every "link[] in the chain" on which a party "bases its cause of action." *Moore*, 270 U.S. at 610 (interpreting predecessor to Rule 13). That expansive interpretation serves critical purposes: by encouraging defendants to bring counterclaims related to the complaint, it "prevent[s] multiplicity of actions" and "achieve[s] resolution in a single lawsuit of all disputes arising out of common matters." *S. Const. v. Pickard*, 371 U.S. 57, 60 (1962).

Consistent with those principles, the Supreme Court has made clear that a counterclaim is compulsory when it arises from *any* part of plaintiff's claim. In the Court's foundational decision in *Moore*, which the later-enacted Rule 13 incorporates, the Court determined that a counterclaim was compulsory because facts alleged by the plaintiff "enter into and constitute *in part* the cause of action set forth in the counterclaim." 270 U.S. at 610 (emphasis added); *see Baker v. Gold Seal Liquors*, 417 U.S. 467, 469 n.1 (1974). The Court rejected the notion that a shared "transaction" does not exist simply because the facts underlying each action "are not precisely identical" or because the counterclaim "embraces additional allegations." *Moore*, 270 U.S. at 610. Even without such an exact match, the Court explained, a related counterclaim is still compulsory—especially

when "the failure of the [claim]" would "establish a foundation for the [counterclaim]." *Id.*

The panel decision sharply breaks from *Moore* and its progeny. The panel held that a counterclaim is compulsory only when it arises from *every* factual theory of liability underlying the claim. App.16. Under that novel rule, any "unrelated" theory of liability pled within the claim converts an otherwise compulsory counterclaim into a permissive one, no matter how close the connection otherwise is between the claim and the counterclaim. *Id.* That approach plainly conflicts with *Moore*, which makes clear that the factual overlap between claim and counterclaim need only be "in part," and that the presence of "additional allegations" does not convert a compulsory counterclaim into a permissive one. 270 U.S. at 610. The panel's approach also defeats the purpose of the Court's expansive interpretation of Rule 13, because it converts a practical test that encourages resolution of common disputes in a single case into a hyper-technical, theory-by-theory assessment that a claimant can easily manipulate.

The conflict with *Moore* is especially apparent as applied to the facts here. Zunum acknowledged that its patent-misappropriation argument put "at issue" the inventorship of Boeing's patents, Dkt.32, at 2, thereby making clear that the "failure" of Zunum's misappropriation claim would have "establish[ed] a foundation" for Boeing's inventorship counterclaims, *Moore*, 270 U.S. at 610. In

*Moore*, the Court regarded a connection of the same character as dispositive. Yet the panel ignored that feature of this case, focusing on the number of paragraphs in the complaint discussing Boeing's patents instead of the *substance* of those paragraphs. App.15-16.

**2. *Ninth Circuit precedent.*** The panel decision also creates irreconcilable conflicts in this Circuit's precedent, as the concurrence reflects.

First, the panel's rule that a counterclaim is compulsory only if *every* factual theory underpinning a single claim arises from the same transaction or occurrence as the counterclaim conflicts with this Court's decision in *Pochiro v. Prudential Insurance*, 827 F.2d 1246 (9th Cir. 1987). In *Pochiro*, a company sued its former employee for misappropriation of records, and the employee later sued the company. This Court held that the later suit was composed of compulsory counterclaims that should have been brought in the initial action. This Court reached that conclusion by determining that *only two* of *eight* theories of liability embedded in the employee's claims related to the initial action. *See* 827 F.2d at 1250 (identifying allegations that company called employee a "crook"). That *partial* overlap was enough to show a sufficiently "close relationship" between the two actions. *Id.* The panel's approach would have dictated a different result.

Second, the panel effectively eliminated half of this Circuit's compulsory-counterclaim test. This Court has held that a counterclaim is compulsory if (1)

"the same operative facts serve as the basis of" a claim and the counterclaim, *or* (2) "the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Mattel*, 705 F.3d at 1110. Here, the panel acknowledged every fact necessary to establish that Boeing's counterclaims satisfy the second of those alternatives. The panel explained that "Zunum's trade secret misappropriation claim established a 'substantial controversy' for Boeing's patent inventorship counterclaims because Zunum made it clear that it sought to prove misappropriation in part by challenging Boeing's inventorship of its patents." App.16. That had the effect of "activat[ing] Boeing's ability to seek a declaratory judgment to establish patent inventorship," *id.*, a right that was "otherwise dormant" in Boeing, *Mattel*, 705 F.3d at 1110.

Prior to the panel decision, that activation would clearly have been enough to compel any court in this Circuit to deem Boeing's counterclaims compulsory. After the panel decision, there is no telling whether that activation is sufficient—or even relevant. The panel purported to square its approach with governing law by reasoning that, because Zunum included non-patent allegations in its misappropriation claim, "the 'aggregate core' of facts" underlying Zunum's claim did not activate Boeing's counterclaims. App.17. But that reasoning only makes matters worse, because the panel offers no guidance on how to determine an "aggregate core" of facts. Litigants and district courts are left to guess what facts

must be considered and what facts must not. Indeed, even in this very case the panel could not align three judges behind one understanding of an "aggregate core." The panel's reasoning thus leaves this Court's compulsory-counterclaim test in disarray.

Third, the panel diverged from Circuit precedent by relying on the fact that "Zunum prevailed on its trade secret misappropriation claim even though Boeing prevailed on its counterclaims." App.16-17; App.15. In *Pochiro*, this Court ruled that the employee's abuse-of-process claim was compulsory, even though success on that claim did "not require that the prior dispute be resolved in favor of the abuse of process claimant." 827 F.2d at 1252. And as Judge Bade's concurrence explains, this Court has recognized that a party's counterclaim for recoupment is compulsory "even though success on the counterclaim is logically compatible with success on the primary claim." App.29 (citing *Cooper v. SSA*, 131 F.4th 995, 1009 (9th Cir. 2025)). The panel's contrary reasoning creates a clear intra-circuit conflict.

Fourth, the panel creates an intractable conflict between *Pochiro* and *Hydranautics v. FilmTec*, 70 F.3d 533 (9th Cir. 1995). The panel reads *Hydranautics* to hold that claims "shar[ing] a factual overlap" do *not* arise from the same transaction or occurrence, so long as different facts ultimately "control" whether each claim succeeds. App.14. As Judge Bade explained, that "reading of

*Hydranautics*, if applied faithfully to the facts of *Pochiro*, would counsel a different result" in *Pochiro* "given the logical compatibility between the claims at issue" in that case. App.30 n.4. The panel has thus created an "irreconcilable conflict" between *Pochiro* and *Hydranautics*, and—as Judge Bade suggested—"this case should be taken en banc to resolve the conflict." *Id.*[2]

**3. *Other circuits' precedent.*** Finally, the panel has thrust this Circuit into a split with numerous other circuits, which decided long ago not to adopt the panel's "every theory must relate" rule and frequently deem counterclaims compulsory in circumstances in which that rule would dictate the opposite result. *See, e.g.*, *United Artists v. Masterpiece Productions*, 221 F.2d 213, 216 (2d Cir. 1955) (counterclaim compulsory based on relationship to one affirmative defense); *Great Lakes Rubber v. Herbert Cooper*, 286 F.2d 631, 632-34 (3d Cir. 1961) (counterclaim compulsory based on relationship to one of several theories of antitrust liability); *Painter v. Harvey*, 863 F.2d 329, 331-33 (4th Cir. 1988) (counterclaim may be compulsory "even though the evidence needed to prove the opposing claims may be quite different").

---

[2] Judge Bade concurred in the denial of rehearing based on a different interpretation of *Hydranautics*. But if this case were taken en banc, *Hydranautics* would not bind this Court, which would be free to restore focus on the text of Rule 13 as Judge Bade's concurrence suggests (App.25).

### B. The Panel's Decision Errs on an Exceptionally Important Issue

Rehearing en banc is further warranted because the panel decision errs on an exceptionally important issue that plays a critical role in everyday litigation across this Circuit—the proper interpretation of the compulsory-counterclaim test. Defendants routinely must apply that test, given that failing to bring a counterclaim later held to have been compulsory results in forfeiture of that claim. *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1201 (9th Cir. 2010). And district courts rely on that test's expansive construction to encourage defendants to bring counterclaims that allow disputes arising out of common facts to be litigated one time, in one forum.

The panel decision moves this Circuit's law in a starkly different direction. It removes a powerful incentive for defendants to bring counterclaims—and thus introduces the possibility of duplicative litigation over the same issues—whenever plaintiffs have chosen to plead alternative theories of liability under the banner of a single claim. And it trades a practical test that asks whether claims are "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit," *Pochiro*, 827 F.2d at 1249, for a subjective hunt for an "aggregate core" of facts, App.16. Litigants have already gotten the message: they view the panel's decision as requiring parties to

"[m]easure proportion, not subject matter" to determine whether counterclaims are compulsory[3]—even though Rule 13's text says just the opposite.

The panel's divergence from that text and from courts' longstanding interpretation of it is especially problematic in this case, which called for the panel to decide whether Boeing's counterclaims triggered the Federal Circuit's exclusive jurisdiction. When Congress amended the jurisdictional statute in 2011 to grant the Federal Circuit exclusive jurisdiction in cases involving compulsory patent-law counterclaims, Congress did so against the backdrop of the flexible and practical interpretation that had long governed the compulsory-counterclaim test. The panel's departure from that test is in plain conflict with the jurisdictional statute that Congress designed. *See Evans v. United States*, 504 U.S. 255, 259 (1992) (presuming Congress adopts longstanding meaning of terms of art).

The panel's theory-based approach is also wholly impractical. Defendants need to know at the pleading stage whether a counterclaim is compulsory—but, "given the permissive nature of pleading under the federal rules, no one can be certain what the issues are until after the pleadings are closed and discovery is underway." 6 Fed. Prac. & Proc. Civ. § 1410 (3d ed.). That basic reality raises the

---

[3] Sigma Law Group, *Boeing Argued the Wrong Court Heard Its Appeal, and Lost Twice* (Aug. 29, 2026), https://sigmalawgroup.com/blog/2026-08-29-boeing-zunum-jurisdiction/.

specter that a plaintiff's theories of liability may drop out of the case or first emerge *after* the pleading stage—potentially converting (under the panel's approach) a defendant's counterclaim from permissive to compulsory or vice versa long after the deadline for the defendant's answer.

The panel's remaking of this Circuit's law also will wreak havoc in other civil-procedure contexts. For instance, Rule 13(g)'s test for permissive crossclaims is generally limited to claims that (as in Rule 13(a)'s compulsory-counterclaim test) "arise[] out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim." The panel's restrictive approach to the transaction-or-occurrence test would thus not only discourage related counterclaims, but also *prohibit* related crossclaims. In addition, Rule 20's standard for joinder of plaintiffs and defendants incorporates a transaction-or-occurrence test that is similar to the test in Rule 13. *See* Fed.R.Civ.P.20(a)(1)(A), (2)(A); *Mosley v. General Motors*, 497 F.2d 1330, 1333 (8th Cir. 1974). The panel's "every theory" approach may thus inadvertently restrict joinder in circumstances in which there are multiple theories of liability, some of which do not apply to every party.

In addition, the panel's interpretation of Rule 13 creates disruptive discordance between the tests for supplemental jurisdiction and for compulsory counterclaims. As to the former, the panel found a "common nucleus of operative

fact" because the claims and counterclaims were "related to Boeing's access to and alleged misuse of confidential information." App.24. But when the panel turned to the compulsory-counterclaim issue, it displaced that sensible comparison with its theory-by-theory examination of Zunum's claims. Under the panel's approach, district courts will now be forced to undertake artificially distinct inquiries when assessing supplemental jurisdiction and compulsoriness, even though each doctrine fundamentally asks whether the claims are sufficiently related to be tried together.

Finally, the panel's approach invites unacceptable gamesmanship. Under the panel's new rule, plaintiffs can manipulate whether counterclaims are permissive or compulsory simply by choosing whether to plead their arguments as one claim with alternative theories or as multiple separate claims. *See* Fed.R.Civ.P.8(d)(2) (giving plaintiffs precisely that choice). Such manipulation can yield unwarranted litigation advantages. For example, plaintiffs in many cases will be able to make defendants' counterclaims untimely by rendering them permissive, rather than compulsory. *See* 6 Fed.Prac.&Proc.Civ. § 1419 (3d ed.) ("majority view" that "plaintiff's suit tolls or suspends the running of the statute of limitations" for a "compulsory counterclaim"); *Bull v United States*, 295 U.S. 247, 262 (1935) (recoupment counterclaims "never barred by the statute of limitations"); *In re Gardens Reg'l Hosp. & Med. Ctr.*, 975 F.3d 926, 934 (9th Cir. 2020) (test for recoupment counterclaims same as "transaction or occurrence" test

for compulsory counterclaims). And in cases like this one, a plaintiff that wishes to avoid the Federal Circuit can defeat that court's exclusive jurisdiction by pleading patent-related controversies along with alternative theories of liability—a result directly at odds with Congress's goal of promoting "uniformity" and "coherence" in patent law. *Rearden*, 841 F.3d at 1331.

It makes no sense for compulsoriness, and the consequences that follow, to turn on a plaintiff's pleading choices. The Federal Rules are indifferent to the form in which claims are pleaded, and a counterclaim's relation to a plaintiff's claims does not vary simply because the plaintiff chooses to put alternative theories in different claims rather than in a single count. The panel's pleading-focused approach is wrong and should be vacated.

## II. THE PANEL'S DECISION STRENGTHENS BOEING'S PENDING PETITION FOR REHEARING EN BANC

In all events, the Court should grant Boeing's initial (and still pending) petition for rehearing en banc. CA9.Dkt.65.1. Boeing's initial petition sought rehearing to address the panel's merits-stage decision to reverse the district court's new-trial grant under the wrong de novo standard and to hold that plaintiffs "need not precisely define the boundaries of each claimed trade secret," CA9.Dkt.65.1, at 10-19—a holding that the Chamber of Commerce has identified as ripe for en banc review with this specific case as a worthy vehicle, CA9.Dkt.66.1. Both issues still warrant en banc rehearing, and even more urgently now than before. The panel's

plaintiff-friendly trade-secrets holding provides a powerful incentive for plaintiffs alleging patent-based misappropriation to keep any appellate review in this Court (not the Federal Circuit). And now the panel's appellate-jurisdiction decision provides a roadmap for plaintiffs to do precisely that. Even if this Court leaves the panel's appellate-jurisdiction decision intact, then, it should grant Boeing's initial en banc rehearing petition.

## CONCLUSION

Rehearing en banc should be granted.

Respectfully submitted,

Dated: September 23, 2026

**MUNGER, TOLLES & OLSON LLP**

By: *<u>/s/ Donald B. Verrilli, Jr.</u>*
Donald B. Verrilli, Jr.

*Counsel for Defendants, Counter-Claimants, and Appellees The Boeing Company and Boeing HorizonX Ventures, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using ACMS.

Dated: September 23, 2026

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form: https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 24-5212; 24-5751

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

(●) Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4,198 **.**
*(Petitions and responses must not exceed 4,200 words)*

**OR**

( ) In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/ Donald B. Verrilli, Jr. **Date** September 23, 2026
*(use "*s/[typed name]*" to sign electronically-filed documents)*

# APPENDIX

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ZUNUM AERO, INC.,<br><br>*Plaintiff-ctr-defendant - Appellant*,<br><br>v.<br><br>THE BOEING COMPANY; BOEING HORIZONX VENTURES, LLC,<br><br>*Defendant-ctr-claimants - Appellees*. | No. 24-5212<br><br>D.C. No. 2:21-cv-00896-JLR<br>Western District of Washington, Seattle<br><br>ORDER |
| ZUNUM AERO, INC.,<br><br>*Plaintiff-ctr-defendant - Appellant*,<br><br>v.<br><br>THE BOEING COMPANY; BOEING HORIZONX VENTURES, LLC,<br><br>*Defendant-ctr-claimants - Appellees*. | No. 24-5751<br><br>D.C. No. 2:21-cv-00896-JLR<br>Western District of Washington, Seattle |

Filed August 26, 2026

Before: Johnnie B. Rawlinson, Bridget S. Bade, and Lucy H. Koh, Circuit Judges.

Order by Judge Koh;
Concurrence by Judge Bade

## SUMMARY*

**Trade Secrets / Appellate Jurisdiction**

The panel filed an order denying a petition for panel rehearing following the panel's reversal, in a memorandum disposition, of the district court's reversal of a jury award and the district court's grant of judgment as a matter of law and a conditional new trial in favor of The Boeing Co. and Boeing HorizonX Ventures, LLC ("Boeing").

In 2020, Zunum Aero, Inc. ("Zunum") sued Boeing in King County (Washington) Superior Court. Zunum brought 12 Washington state law claims, including breach of contract claims, tortious interference claims, and a trade secret misappropriation claim involving 30 trade secrets. In support of its trade secret misappropriation claim, Zunum alleged, *inter alia*, that two Boeing patents contained information that Boeing misappropriated from Zunum. Zunum raised many other facts and theories to support its trade secret misappropriation claim. Boeing counterclaimed

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and sought a declaration that Boeing was the sole inventor of one of the patents. Boeing removed the case to federal district court on the basis of its patent inventorship counterclaim, after which Boeing added an additional counterclaim seeking to establish the inventorship of Boeing's second patent.

The district court granted Boeing summary judgment regarding both of its patent counterclaims. By contrast, there was an eight-day jury trial on Zunum's trade secret misappropriation claim and several other state law claims. After a jury awarded Zunum over $92 million in damages, the district court granted Boeing's motion for judgment as a matter of law and for a conditional new trial.

After the panel reversed the district court, Boeing argued for the first time in its petition for rehearing and rehearing en banc that this court lacks appellate jurisdiction. According to Boeing, the Federal Circuit has exclusive jurisdiction because this case involves a compulsory counterclaim arising under federal patent law. The panel held that Boeing's patent inventorship counterclaims arose under federal patent law but were not compulsory, and therefore the Ninth Circuit has jurisdiction. Applying Ninth Circuit precedent, the panel held that Boeing's counterclaims were not compulsory because they were not "logically related" to Zunum's trade misappropriation claim, in that (1) the same operative facts did not serve as the basis of both Zunum's trade secret misappropriation claim and Boeing's patent inventorship counterclaims; and (2) the aggregate core of facts upon which Zunum's trade secret misappropriation claim rests did not activate additional legal rights otherwise dormant in Boeing, specifically, the right to file declaratory judgment claims to resolve patent inventorship. Boeing won on its patent inventorship counterclaims at summary

judgment whereas Zunum won on its trade secret misappropriation claim at a jury trial because Zunum had many theories to support its trade secret misappropriation claim, only one of which suggested that Boeing was not the sole inventor of its patents. The panel held that Federal Circuit precedent did not control. However, it noted that Boeing's counterclaims would also not be compulsory under Federal Circuit precedent, which examines the "extent of factual overlap between what the plaintiff *must* establish to prove its claim and what the defendant *must* establish to prove its counterclaim." *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1326 (Fed. Cir. 2008).

The panel rejected Boeing's fallback argument that if its patent inventorship counterclaims are permissive, then the district court necessarily erred in exercising supplemental jurisdiction over Zunum's state law claims. Agreeing with the only other circuits to address this question, the First, Second, and Seventh Circuits, the panel held that a federal district court may exercise supplemental jurisdiction over state law claims based on a permissive rather than compulsory counterclaim. Because Zunum's state law claims and Boeing's federal counterclaims shared a common nucleus of operative fact—Boeing's access to and alleged misuse of confidential information regarding Zunum's hybrid electric aircraft technology—the district court properly exercised supplemental jurisdiction over Zunum's state law claims.

Concurring in part and concurring in the order denying the petition for panel rehearing, Judge Bade agreed with the majority's conclusion that Boeing's counterclaims were permissive, thus making jurisdiction proper in this court, but she did not agree with the majority's analysis of that issue. Specifically, she disagreed with the majority's view

that a counterclaim is compulsory whenever it has a "logical relationship" to the plaintiff's claim. Instead, Federal Rule of Civil Procedure 13(a) requires the court to identify the occurrence or occurrences that are essential to maintaining both the claim and counterclaim and evaluate whether these occurrences are sufficiently related to one another such that they can be said to be part of the same transaction. Applying that standard, Boeing's counterclaims were permissive, not compulsory.

---

**ORDER**

KOH, Circuit Judge:

After this panel ruled against the Boeing Co. and Boeing HorizonX Ventures, LLC, (collectively, "Boeing") on appeal, Boeing argued for the first time in its petition for panel rehearing and rehearing en banc that this court lacks appellate jurisdiction over this case. Boeing claims that the Federal Circuit has exclusive appellate jurisdiction because this is an appeal from an action involving compulsory counterclaims that arise under federal patent law. Further, Boeing claims that if this court concludes to the contrary and determines that this case only involved permissive, *i.e.*, non-compulsory, patent counterclaims, then the district court necessarily erred in holding that it had supplemental jurisdiction over Zunum's state law claims based on those permissive counterclaims. For the reasons stated below, we

reject both of Boeing's arguments and deny its petition for panel rehearing.[1]

## I. PROCEDURAL HISTORY

In 2020, Zunum sued Boeing in the Superior Court of the State of Washington for King County for misusing confidential information related to Zunum's hybrid electric aircraft technology. Zunum's sprawling 576-paragraph First Amended Complaint ("FAC") brought 12 claims under Washington state law, including multiple claims for breach of contract, tortious interference with various business expectancies, and violations of the Washington Consumer Protection Act, and a single claim for trade secret misappropriation under the Washington Trade Secrets Act.

In support of its breach of contract claims and tortious interference claims, Zunum alleged that, *inter alia*, Boeing had breached its contracts with Zunum by misusing confidential information and tortiously interfered with Zunum's business expectancies by using Zunum's confidential information to develop its own hybrid electric aircraft.

In support of its trade secret misappropriation claim, Zunum alleged, *inter alia*, that two Boeing patents contained information that Boeing misappropriated from Zunum. First, Zunum alleged that the Thin Haul Hybrid Electric Propulsion System patent ("Thin Haul patent"), "borrows heavily from Zunum's ZA10 architecture, which Zunum [had] yet to disclose publicly."[2] Second, Zunum alleged that

[1] Boeing also raised challenges to the merits of the panel's decision. We do not find them persuasive.

[2] The Thin Haul patent, U.S. Patent No. 11,110,811, was granted to Boeing by the U.S. Patent Office on September 7, 2021.

the Active Voltage Control for Hybrid Electric Aircraft patent ("Active Voltage patent"), contained information that "relates closely to issues addressed by . . . [a] patent filed by Zunum in August 2018."[3] According to Zunum, the Active Voltage patent supported Zunum's allegations of misappropriation because a "precondition for patent issuance is representation of inventorship, which means that [the invention covered by the patent] did not exist previously, and that someone else did not invent it." Zunum further alleged that one of the inventors listed on Boeing's Active Voltage patent attended Boeing's "'investment' assessment of Zunum's intellectual property."

Zunum raised many other facts and theories to support its trade secret misappropriation claim in its FAC. Zunum alleged that Boeing obtained access to trade secrets pursuant to agreements that strictly prohibited any use other than to evaluate or manage Boeing's investment in Zunum or to explore other collaborations with Zunum. Zunum listed over 30 such trade secrets that Boeing allegedly misappropriated. Zunum alleged that Boeing misappropriated these trade secrets by, for example, improperly using those secrets to "replicate Zunum's proprietary aircraft design," and improperly disclosing Zunum's trade secrets to multiple "third parties," including Safran, S.A.

In response, Boeing served interrogatories that sought to clarify whether Zunum was challenging the inventorship of Boeing's patents. Zunum responded and stated that "patents filed by Boeing . . . derive from the unique hybrid electric architecture of the Zunum aircraft."

---

[3] The Active Voltage patent, U.S. Patent No. 10,589,635, was granted to Boeing by the U.S. Patent Office on March 17, 2020.

Subsequently, Boeing counterclaimed in state court and sought a declaration that Boeing's "employees, affiliates, or associates" were the "sole inventors" of the Active Voltage patent.

In July 2021, Boeing removed the case to the United States District Court for the Western District of Washington, Seattle Division, under 28 U.S.C. §§ 1331, 1338(a), 1454(a), on the sole basis of its patent inventorship counterclaim. Boeing's notice of removal stated that "Zunum's response to Boeing's . . . interrogatory prompted Boeing to bring a counterclaim seeking a declaratory judgment as to the inventorship of [the Active Voltage] patent." According to Boeing, that was because Zunum's response stated that certain Boeing patents "*derive from* the unique hybrid electric architecture of the Zunum aircraft," and "[d]erivation is a legal concept that relates to an inventorship dispute under federal patent laws; it signifies that the claimed invention was 'constructed' from the invention of another." Boeing also invoked supplemental jurisdiction over Zunum's state law claims under 28 U.S.C. § 1367(a), on the basis that those claims were related to the only federal claim in the case at the time, *i.e.*, Boeing's counterclaim seeking declaratory judgment to establish the validity of its Active Voltage patent. *See also id*. § 1454(d).

Before the federal district court, Boeing filed an additional counterclaim in December 2021 seeking declaratory judgment to establish the validity of Boeing's Thin Haul patent.[4] In April 2024, the district court granted

[4] Boeing could not seek a declaratory judgment concerning the Thin Haul patent at the time of removal to the district court because the patent had not issued at that time.

Boeing's motion for summary judgment regarding both of its patent counterclaims.

However, the district court denied Boeing's motion for summary judgment regarding Zunum's trade secret misappropriation claim. That claim was eventually tried to a jury over an eight-day trial in May 2024 along with several other of Zunum's state law claims. The jury found that Boeing had misappropriated 11 of 19 alleged trade secrets presented at trial, breached one of two contracts, and tortiously interfered with Zunum's business expectancy with a potential investor, Safran, S.A. The jury awarded Zunum $67.08 million in actual damages and $14.15 million in unjust enrichment on Zunum's trade secret misappropriation claim. The jury did not award damages regarding Boeing's breach of contract to avoid double recovery. The jury awarded Zunum $11.56 million in damages for Boeing's tortious interference with Zunum's business expectancy with Safran, S.A.

After the jury trial, the district court granted Boeing's motion for judgment as a matter of law ("JMOL") and Boeing's motion for a conditional new trial and thus vacated the jury verdict. On appeal, this panel reversed the district court's grant of JMOL and conditional grant of a new trial and remanded with the instruction that this case be assigned to a different district judge on remand.[5] Subsequently, Boeing filed its petition for panel rehearing and rehearing en banc, in which Boeing argued that the Ninth Circuit lacks appellate jurisdiction.

---

[5] The case was reassigned because the judge presiding over the case in the district court acquired Boeing stock twice through his spouse during the pendency of litigation and did not promptly disclose these transactions to the parties.

## II. DISCUSSION

"Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review," even when the issue is raised for the first time in a petition for rehearing, and even when it is raised by the party that originally invoked federal jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (citation modified); *see Preblich v. Battley*, 181 F.3d 1048, 1054 (9th Cir. 1999).

We first address the jurisdiction of this court. Although this case involves counterclaims that arise under federal patent law, these counterclaims are permissive, not compulsory, because they do not arise from the same transaction or occurrence as Zunum's claims. Thus, we hold that the Ninth Circuit has appellate jurisdiction over this case. We reach this conclusion under both Ninth Circuit and Federal Circuit law governing compulsory counterclaims.

We then address the district court's exercise of supplemental jurisdiction over Zunum's state law claims. Consistent with every other circuit that has addressed this question, we hold that a federal district court may exercise supplemental jurisdiction over state law claims that share a common nucleus of operative fact with the claim that supplies the basis for federal jurisdiction, even when those claims do not arise from the same transaction or occurrence. Thus, because Zunum's state law claims and Boeing's federal counterclaims share a common nucleus of operative fact—Boeing's access to and alleged misuse of confidential information regarding Zunum's hybrid electric aircraft technology—the district court properly exercised supplemental jurisdiction over all claims in this action. Boeing's petition for panel rehearing is therefore denied.

### A. Appellate Jurisdiction

The Federal Circuit has "exclusive jurisdiction" over an appeal "in any civil action in which a party has asserted a compulsory counterclaim arising under[] any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1). That is true regardless of whether such a counterclaim is at issue on appeal. *See Breed v. Hughes Aircraft Co.*, 253 F.3d 1173, 1178 (9th Cir. 2001). Accordingly, we must consider whether Boeing's patent inventorship counterclaims arise under patent law, and if so, whether they are compulsory. For the reasons explained below, we conclude that Boeing's patent inventorship counterclaims arise under federal patent law but are not compulsory. Therefore, this court has appellate jurisdiction over this appeal.

#### 1. Boeing's patent inventorship counterclaims arise under federal patent law.

As a preliminary matter, Boeing's patent inventorship counterclaims arise under federal patent law. The parties agree on this point. A counterclaim arises under federal patent law when "federal patent law creates the cause of action" or the "right to relief necessarily depends on resolution of a substantial question of federal patent law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988). In this case, federal patent law "creates the cause of action" for Boeing to seek declaratory judgments to resolve inventorship disputes over patents. *See Medtronic v. Mirowski Fam. Ventures*, 571 U.S. 191, 196-98 (2014) (holding that a "declaratory judgment" question arose under federal patent law when the "hypothetical threatened action" that could have been "brought in the absence of a declaratory judgment" arises under federal patent law); *see also Breed*,

253 F.3d at 1177-78 (patent law creates a claim for correction of inventorship).

**2. Boeing's patent inventorship counterclaims are not compulsory under either Ninth Circuit or Federal Circuit law, and therefore this panel has jurisdiction.**

However, Boeing's patent inventorship counterclaims are not compulsory under either Ninth Circuit law, which binds this court, or Federal Circuit law. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Circuit law . . . binds all courts within [the] circuit, including the court of appeals itself."). Thus, the Ninth Circuit and not the Federal Circuit has jurisdiction over this appeal.

Although Congress did not specifically define "compulsory counterclaim" in 28 U.S.C. § 1295(a)(1), it is clear from the statutory context that Congress intended for this phrase to incorporate the compulsory counterclaim test prescribed by Federal Rule of Civil Procedure ("FRCP") 13(a). *See Sekhar v. United States*, 570 U.S. 729, 732-33 (2013); *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1256 (9th Cir. 2022). Such counterclaims are denominated compulsory because they will be barred under the doctrine of res judicata if not asserted. *See Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir. 1960) ("If a party fails to plead [compulsory counterclaims], he is held to have waived them and is precluded by res judicata from ever suing upon them again.").

FRCP 13(a) provides that a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). To determine whether a counterclaim "arises

out of" the same "transaction or occurrence" as the claim under FRCP 13(a), the Ninth Circuit applies the "logical relationship" test. *See Mattel v. MGA Ent., Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (explaining that a counterclaim is compulsory if there is a "logical relationship" between the claim and the counterclaim). We have further explained that a "logical relationship" exists between a claim and counterclaim if the counterclaim "arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Id.* (quoting *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005), and citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). Therefore, a logical relationship ordinarily exists where either (1) the "same operative facts serve as the basis of both" Zunum's trade secret misappropriation claim and Boeing's patent inventorship counterclaims; or (2) "the aggregate core of facts upon which [Zunum's trade secret misappropriation claim] rests activates additional legal rights otherwise dormant in [Boeing]" to bring its patent inventorship counterclaims.[6] *Id.* (citation omitted).

---

[6] The concurrence objects to our reliance on *Mattel*, which applied this court's earlier precedent, which itself relied on U.S. Supreme Court precedent. *See* Concurrence at 25-28. However, Ninth Circuit precedent binds this panel. *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 940 (9th Cir. 2020) ("Absent intervening, controlling authority, a three-judge panel may not overrule a prior decision of this court."). Additionally, the concurrence does not dispute that the Ninth Circuit applies the logical relationship test to determine whether a counterclaim is compulsory, which requires us to examine whether the counterclaim "arises from the same aggregate set of operative facts as the initial claim." *Mattel*, 705 F.3d at 1110 (citation omitted).

Neither requirement is met in this case. First, "the same operative facts" do not "serve as the basis of both" Zunum's trade secret misappropriation claim and Boeing's patent inventorship counterclaims. *Id.* (citation omitted). The same operative facts serve as the basis of a claim and counterclaim when both share "[e]ssential facts," *Moore*, 270 U.S. at 610, or "the facts necessary to prove the two claims substantially overlap," *Pochiro v. Prudential Insurance Co. of America*, 827 F.2d 1246, 1251 (9th Cir. 1987). "What matters is not the legal theory but the *facts*." *Mattel*, 705 F.3d at 1110.

For example, in *Mattel*, we concluded that there was insufficient factual overlap between competing claims that trade secrets were stolen, even if "some of the trade secret information" that one party allegedly misappropriated from the second party "incorporated trade secret information" that the second party had allegedly stolen from the first. *Id.* The mere fact that "the same information may have shuttled back and forth between Mattel and MGA" was not "a sufficient nexus to support a compulsory counterclaim." *Id.*

Similarly, in *Hydranautics v. FilmTec Corp.*, 70 F.3d 533 (9th Cir. 1995), we acknowledged that plaintiff's patent infringement claim and defendant's antitrust counterclaim for predatory patent litigation shared a factual overlap—namely, who owned the patent—but concluded that the "significant difference . . . between the facts which control the patent infringement claim and the facts which control the antitrust claim" meant that the antitrust counterclaim was merely permissive, not compulsory. *Id.* at 537.

Here, the factual overlap between Zunum's trade secret misappropriation claim and Boeing's patent inventorship counterclaims is similarly insufficient to establish that the "same operative facts serve as the basis of both claims" such

that Boeing's counterclaims are compulsory. *Mattel*, 705 F.3d at 1110 (citation omitted). As discussed earlier, Boeing's counterclaims arose out of just two of the 576 paragraphs in Zunum's complaint. Zunum had many theories to support its trade secret misappropriation claim. Specifically, Zunum alleged in its FAC that Boeing had misappropriated over 30 alleged trade secrets by either using or disclosing those trade secrets in many different contexts, of which Boeing's patents were just one. Additionally, Boeing won on its patent inventorship counterclaims at summary judgment whereas Zunum won on its trade secret misappropriation claim at a jury trial.[7] Thus, there was no need for Zunum to prove that Boeing was not the sole inventor of Boeing's patents to prevail on Zunum's trade secret misappropriation claim. Therefore, although the claims share some facts, they do not share "[e]ssential facts," *Moore*, 270 U.S. at 610, and the facts do not "substantially overlap," *Pochiro*, 827 F.2d at 1251.

Second, for similar reasons, the "*aggregate core* of facts upon which [Zunum's trade secret misappropriation claim] rests" did not "activate[] additional legal rights otherwise dormant in" Boeing, *id.* (emphasis added) (citation omitted), specifically, the right to file declaratory judgment claims to resolve patent inventorship.

[7] Contrary to the concurrence's suggestion, we do not hold that that "logical compatibility between a claim and counterclaim . . . *necessarily* demonstrates an insufficient factual overlap between the two claims." Concurrence at 29 (emphasis added). Instead, we agree with the concurrence that "the possibility that both the plaintiff's claim and the defendant's counterclaim could be successful often, but not always, indicates that the two claims arise from different transactions." Concurrence at 31.

Even if Zunum's trade secret misappropriation claim activated Boeing's ability to seek a declaratory judgment to establish patent inventorship, the "aggregate core" of facts upon which Zunum's trade secret misappropriation claim rests did not do so. Boeing argues that Zunum's claim "activate[d]" Boeing's right to file its counterclaims because Boeing would not have been able to seek a declaratory judgment against Zunum if Zunum had not attempted to prove Boeing's trade secret misappropriation by challenging the inventorship of Boeing patents. *In re Pegasus*, 394 F.3d at 1196. A patent holder seeking declaratory judgment regarding the inventorship of a patent must establish "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" in order to satisfy the case-or-controversy requirement of Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted); *see also* 35 U.S.C. § 282(a) ("A patent shall be presumed valid."). As the district court held, Zunum's trade secret misappropriation claim established a "substantial controversy" for Boeing's patent inventorship counterclaims because Zunum made it clear that it sought to prove misappropriation in part by challenging Boeing's inventorship of its patents.

However, as Boeing conceded at oral argument, it is possible for a claim to activate a defendant's dormant legal right to bring a counterclaim, and yet not activate that dormant right based on the "aggregate core of facts upon which [the claim] rests." *Mattel*, 705 F.3d at 1110 (citation omitted). As explained above, Zunum had many theories to support its trade secret misappropriation claim that were unrelated to Boeing's patents. Further, Zunum prevailed on its trade secret misappropriation claim even though Boeing

prevailed on its counterclaims, and Boeing's patent inventorship counterclaims did not even need to go to a jury trial, unlike Zunum's trade secret misappropriation claim. Thus, the "aggregate core" of facts upon which Zunum's trade secret misappropriation claim rests did not activate Boeing's right to file its patent inventorship counterclaims.

Boeing's remaining argument fails on its own terms. Boeing contends that it need only show adequate factual overlap between its patent inventorship counterclaims and a single theory supporting Zunum's trade secret misappropriation claim. But FRCP 13(a) frames the inquiry at the level of the claim, not a theory within the claim. A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's *claim*," Fed. R. Civ. P. 13(a)(1)(A) (emphasis added). Further, under *Mattel*, we examine whether the counterclaim "arises from the same aggregate set of operative facts as the initial *claim*" to determine whether the counterclaim is compulsory. 705 F.3d at 1110 (emphasis added) (citation omitted). Boeing conceded at oral argument that no precedent supports its theory-level approach and that adopting it would require us to create new law. We decline to do so.

The concurrence would instead resolve this case by analogy to *Hydranautics*, 70 F.3d at 536-37. According to the concurrence, *Hydranautics* stands for the proposition that "a claim is generally not a compulsory counterclaim 'to the original suit which furnishes its predicate.'" Concurrence at 30 (quoting *Hydranautics*, 70 F.3d at 537). We disagree with that interpretation of *Hydranautics*. *Hydranautics* looked to "whether the *essential facts*" of the claim and counterclaim at issue in that case were "so logically connected that considerations of judicial economy and

fairness dictate that all the issues be resolved in one lawsuit." 70 F.3d at 536 (emphasis added) (quoting *Pochiro*, 827 F.3d at 1249). Ultimately, *Hydranautics* held that an antitrust claim for predatory patent litigation was not a compulsory counterclaim to the prior suit for patent infringement in light of the "difference in which facts control . . . the patent infringement claim and the facts which control the antitrust claim." *Id.* at 537. Thus, on the facts in that case, "there was not much point in litigating [the] antitrust claims until [the] infringement case was resolved." *Id.*

Not only is the concurrence's reading of *Hydranautics* inaccurate, it is directly at odds with *Pochiro*, where we held that "an abuse of process counterclaim is a compulsory counterclaim in the very action which allegedly is abusive." *Pochiro*, 827 F.2d at 1252. *Hydranautics* itself relied on *Pochiro* for its formulation of the compulsory counterclaim test. *See Hydranautics*, 70 F.3d at 537 (quoting *Pochiro*, 827 F.2d at 1249). The concurrence emphasizes that *Pochiro* does not control because *Pochiro* analyzed state law. *See* Concurrence at 30 n.4. However, *Pochiro* analyzed Arizona Rule of Civil Procedure 13(a) ("Arizona Rule 13(a)"), which *Pochiro* observed "is identical to [FRCP] 13(a)."[8] 827 F.2d

[8] At the time *Pochiro* was decided, Arizona Rule 13(a), like FRCP 13(a), provided that a counterclaim is compulsory "*if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim*." *Pochiro*, 827 F.2d at 1249 (emphasis in original); *see* Fed. R. Civ. P. 13(a)(1)(A) (providing that a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.").

Moreover, the current version of Arizona Rule 13(a) is substantially the same as the version in effect at the time *Pochiro* was decided in 1987. *See* Ariz. R. Civ. P. 13(a)(1)(A) ("A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has

at 1249. Thus, *Pochiro* explicitly relied on federal caselaw that interpreted FRCP 13(a). *Id.* at 1249 n.7. Because the concurrence misinterprets *Hydranautics*, as explained above, we need not resolve whether the concurrence's misinterpretation of *Hydranautics* conflicts with *Pochiro*.

Zunum asks us to apply Federal Circuit precedent instead of Ninth Circuit precedent. Doing so would not change the outcome in this case.[9] The outcome would not differ under Federal Circuit law, which also compels the conclusion that Boeing's counterclaims are permissive, not compulsory. The Federal Circuit uses "three tests to determine whether the 'transaction or occurrence test of [FRCP] 13(a) is met." *In re Rearden LLC*, 841 F.3d 1327, 1332 (Fed. Cir. 2016) (quoting *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1325-26 (Fed. Cir. 2008)). These tests are: "(1) whether the legal and factual issues raised by the claim and counterclaim are largely the same; (2) whether substantially the same evidence supports or refutes both the claim and the counterclaim; and (3) whether there is a logical relationship between the claim and the counterclaim." *Id.*

---

against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .").

[9] We note that the Ninth Circuit is not compelled to apply Federal Circuit law to determine whether we have jurisdiction, even if our jurisdictional inquiry addresses whether the Federal Circuit has exclusive jurisdiction. The U.S. Supreme Court acknowledged in *Christianson* that courts of appeals may permissibly reach different jurisdictional conclusions in the same case because their respective precedents require different answers. *See* 486 U.S. at 818-19. When courts of appeals reach different conclusions on a close jurisdictional question in the same case, the Supreme Court instructs the second court of appeals that answers the jurisdictional question to "adher[e] strictly to principles of law of the case" and generally abide by the jurisdictional decision of the first circuit court to avoid "a perpetual game of jurisdictional ping-pong." *Id.*

(quoting *Nasalok*, 522 F.3d at 1325-26). Ultimately, "[i]n each of the three tests," the "question is the extent of factual overlap between what the plaintiff *must* establish to prove its claim and what the defendant *must* establish to prove its counterclaim." *Nasalok*, 522 F.3d at 1326 (emphasis in original).

Under Federal Circuit law, Boeing's patent inventorship counterclaims are not compulsory because the degree of overlap between "what [Zunum] *must* establish to prove its [trade secret misappropriation] claim and what [Boeing] *must* establish to prove its [patent inventorship] counterclaim[s]" is low.[10] *Id.* (emphasis in original). As discussed above, Zunum had multiple theories that supported its trade secret misappropriation claim and had no need to prove that Boeing was not the sole inventor of Boeing's patents to prevail on that claim. Ultimately, Boeing prevailed on its patent inventorship counterclaims on summary judgment and Zunum prevailed on its trade secret misappropriation claim at a jury trial. This demonstrates that what Zunum "must establish to prove" its claim had little

[10] Although Boeing in its appellate briefing claimed that the "*must* establish" language in *Nasalok* is dictum, Boeing conceded it is not dictum at oral argument. Boeing's petition for rehearing and rehearing en banc relied on the concurrence from Judge Newman in *Nasalok* to argue that the majority opinion is dictum. In her concurrence, Judge Newman stated that it was unnecessary to decide whether the counterclaim in *Nasalok* was compulsory. *See Nasalok*, 522 F.3d at 1330-31 (Newman, J., concurring). However, the panel majority in *Nasalok* held that it was necessary to determine whether the counterclaim in that case was compulsory and decided it was not because "the extent of factual overlap between what the plaintiff *must* establish to prove its claim and what the defendant *must* establish to prove its counterclaim" was low. *Id.* at 1326-28 (majority opinion) (emphasis in original).

overlap with what Boeing "must establish to prove" its counterclaims.

Thus, Boeing's patent inventorship counterclaims are permissive under Ninth Circuit and Federal Circuit law, and the Ninth Circuit has jurisdiction over this appeal. Because we hold that Boeing's patent inventorship counterclaims are permissive, we next address Boeing's argument that supplemental jurisdiction may not be exercised based on permissive counterclaims.

**B. The District Court's Supplemental Jurisdiction**

As a fallback argument, Boeing argues that if its patent inventorship counterclaims are permissive, then the district court necessarily erred in exercising supplemental jurisdiction over any of Zunum's claims under Washington state law for trade secret misappropriation, breach of contract, and tortious interference with various business expectancies. Boeing reasons that if its patent inventorship counterclaims do not "arise[] out of the transaction or occurrence that is the subject matter of [Zunum's] claims" so as to be compulsory, Fed. R. Civ. P. 13(a)(1)(A), then those claims and counterclaims necessarily do not "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), and the district court thus could not exercise jurisdiction over Zunum's state law claims absent an independent basis of federal jurisdiction. We reject this argument and hold that the district court had supplemental jurisdiction over the state law claims in this case.

In 1990, Congress vested the district courts with "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." Federal Courts Study

Committee Implementation Act of 1990, Pub. L. No. 101-650, tit. III, § 310(a), 104 Stat. 5104, 5113 (codified at 28 U.S.C. § 1367(a)). Thus, to exercise supplemental jurisdiction over a state law claim, "[t]he state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 371 (1978) ("It is apparent that *Gibbs* delineated the constitutional limits of federal judicial power.").[11] The enactment of supplemental jurisdiction in 28 U.S.C. § 1367 raised the question of whether district courts may exercise supplemental jurisdiction only over compulsory counterclaims or also over permissive counterclaims, *i.e.* whether the "common nucleus of operative fact" test for supplemental jurisdiction over state law claims is broader than the "transaction or occurrence" test for compulsory counterclaims.

Every circuit to have addressed this question since 28 U.S.C. § 1367(a) was enacted has held that the supplemental jurisdiction test is broader than the compulsory counterclaim test. Specifically, the First, Second, and Seventh circuits have held that federal courts may exercise supplemental jurisdiction based on a permissive counterclaim. *See Glob.*

---

[11] Prior to this enactment, courts analyzed supplemental jurisdiction over state law claims under the doctrines of "pendent" and "ancillary" jurisdiction. *See Artis v. District of Columbia*, 583 U.S. 71, 75 (2018). Circuit courts generally held that pendent and ancillary jurisdiction could only be exercised on the basis of a compulsory counterclaim, but not on the basis of a permissive one. *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210-11 (2d Cir. 2004) (collecting cases); *but see Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 976, 988-93 (3d Cir. 1984) (concluding that a permissive counterclaim arising under state law was within the ancillary jurisdiction of the district court because of the presence of a "common nucleus of operative fact").

*NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 87 (1st Cir. 2010); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212-13 (2d Cir. 2004); *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996). No circuit has held otherwise.

We join our sister circuits. Although both supplemental jurisdiction and compulsory counterclaims require some factual overlap, the overlap required for supplemental jurisdiction is merely a "loose factual connection," *Channell*, 89 F.3d at 385, and the overlap required for a compulsory counterclaim is "substantial[]," *Pochiro*, 827 F.2d at 1251. *See also* 13D WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3567.1 (3d ed. 2008) ("*Gibbs* is broader than transaction or occurrence, and embraces all claims with a loose factual connection to the jurisdiction-invoking claim."). That makes sense, given that failure to raise a compulsory counterclaim precludes a defendant from *ever* raising that claim in a future litigation. *See Union Paving Co.*, 276 F.2d at 470 ("If a party that fails to plead [compulsory counterclaims], he . . . is precluded by res judicata from ever suing upon them again."). By contrast, when the district court lacks supplemental jurisdiction over a claim, it typically either dismisses without prejudice or remands to a court of competent jurisdiction. *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 n.2 (9th Cir. 2019) ("[W]e note that, in general, dismissal for lack of subject matter jurisdiction should be without prejudice.").

The legislative history of 28 U.S.C. § 1367 demonstrates that Congress intentionally made the test for supplemental jurisdiction broader than the test for compulsory counterclaims. The original "statutory language proposed by the [Federal Courts Study] Committee would have authorized supplemental jurisdiction over any claim arising

out of the same 'transaction or occurrence.'" *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995) (quoting Report of the Federal Courts Study Committee 47 (Apr. 2, 1990)). In other words, the Federal Courts Study Committee originally proposed using the compulsory counterclaim test for supplemental jurisdiction. However, "the enacted statute" ultimately "authorizes supplemental jurisdiction coextensive with the 'case or controversy' requirement of Article III." *Id.*

Thus, some *permissive* counterclaims which do not arise out of the same transaction or occurrence as the original claim may nonetheless share a "common nucleus of operative fact" with the original claim, allowing the district court to exercise supplemental jurisdiction over the permissive counterclaim. *Gibbs*, 383 U.S. at 725.

In this case, Boeing's *permissive* counterclaim and Zunum's state law claims share a "common nucleus of operative fact." *Id.* Boeing's patent inventorship counterclaims and Zunum's trade secret misappropriation claim, breach of contract claims, and tortious interference claim are all related to Boeing's access to and alleged misuse of confidential information regarding Zunum's hybrid electric aircraft technology. Zunum originally alleged that Boeing had misused confidential information and thus misappropriated trade secrets; breached its contracts with Zunum by misusing confidential information; and tortiously interfered with Zunum's business expectancies by, *inter alia*, using Zunum's confidential information to develop Boeing's own hybrid electric aircraft. Boeing's counterclaims alleged that its patents were not "derived from any information obtained from Zunum." Zunum's state law claims and Boeing's patent inventorship counterclaims therefore share a loose connection and thus "the entire action

before the court comprises but one constitutional 'case.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *Gibbs*, 383 U.S. at 725). Accordingly, the district court properly exercised supplemental jurisdiction over Zunum's state law claims under 28 U.S.C. § 1367(a).

## III. CONCLUSION

For the foregoing reasons, Boeing's petition for panel rehearing is **DENIED**.

---

BADE, Circuit Judge, concurring in part and concurring in the order denying the petition for panel rehearing:

Although I agree with the majority's conclusion that Boeing's counterclaims were permissive, thus making jurisdiction proper in this court, *see* 28 U.S.C. §§ 1291, 1295(a), I do not agree with the majority's analysis of that issue.[1]

The majority correctly begins with the text of § 1295 and Rule 13(a). *See Order* at 12. But it quickly abandons any focus on the text and instead rigidly applies its interpretation of one sentence of doctrinal synthesis from *Mattel v. MGA Entertainment, Inc.*, 705 F.3d 1108 (9th Cir. 2013). Thus, in the majority's view, a counter claim is compulsory whenever it has a "logical relationship" to the plaintiff's claim, and the "requirement[s]" for such a relationship "ordinarily" exist when either (1) "the same operative facts serve as the basis of both claims," or (2) "the aggregate core of facts upon which the claim rests activates additional legal rights

[1] I join the majority's analysis of the district court's supplemental jurisdiction. *See Order* at 21–25.

otherwise dormant in the defendant." *Order* at 13 (quoting *Mattel*, 705 F.3d at 1110).

But what we must ultimately determine here is not whether there is a "logical relationship" between the claims, whether the "same operative facts" undergird both claims, or whether the "aggregate core of facts" underlying the plaintiff's claim "activates additional legal rights" in the defendant—those phrases are found nowhere in the text of Rule 13(a). The question we must answer is whether the counterclaim "arises out of the transaction or occurrence that is the subject matter of the [plaintiff]'s claim." Fed. R. Civ. P. 13(a)(1)(A). Any subsidiary tests we may devise to answer that question cannot be allowed to take precedence over the text of the rule. *See Groff v. DeJoy*, 600 U.S. 447, 468 (2023) ("[S]tatutory interpretation must 'begi[n] with,' and ultimately heed, what a statute actually says." (quoting *Nat'l Ass'n of Mfrs. v. U.S. Dep't of Def.*, 583 U.S. 109, 127 (2018))).

The key terms in Rule 13(a) are "transaction" and "occurrence." In a similar context, the Supreme Court has explained that "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) (addressing the meaning of "transaction" in former Equity Rule 30, the predecessor to Rule 13);[2] *see also Williams v. Robinson*, 1 F.R.D. 211, 212–13 (D.D.C. 1940) ("[T]he word 'transaction' [in Rule 13(a)]

[2] *See* Fed. R. Civ. P. 13 advisory committee note ("This is substantially [former] Equity Rule 30 (Answer—Contents—Counterclaim), broadened to include legal as well as equitable counterclaims.").

denotes something done; a completed action; an affair as a whole; . . . something which has been acted out to the end.”).

The Court’s explanation of “transaction” suggests that an “occurrence” is a component part of a “transaction.” It also suggests that whether an occurrence is part of the same transaction as another occurrence depends on the “logical relationship” between those occurrences. And to determine the set of occurrences from which a claim arose, we must look to that claim’s “[e]ssential facts”—i.e., “the facts necessary for the determination” of entitlement to relief. *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249, 1252 (9th Cir. 1987) (applying Ariz. R. Civ. P. 13); *accord Moore*, 270 U.S. at 610; *Williams*, 1 F.R.D. at 213. Thus, Rule 13(a) requires that we identify the occurrence or occurrences that are essential to maintaining both the claim and counterclaim and evaluate whether these occurrences are sufficiently related to one another such that they can be said to be part of the same transaction. *See Cooper v. Soc. Sec. Admin.*, 131 F.4th 995, 1009 (9th Cir. 2025). This is not the analysis the majority applied.

Instead, the majority’s analysis applies one sentence in *Mattel* as if it encompasses the entire universe of compulsory counterclaims, such that if one of the two prongs of this “test” are not met, then a counterclaim is necessarily permissive.[3] *See Order* at 12–17. But nothing in *Mattel*

[3] The majority’s statement that a logical relationship “*ordinarily* exists” when one of the two prongs of the test it derives from *Mattel* is met, *Order* at 13 (emphasis added), suggests that other circumstances could establish a sufficient logical relationship. If so, then the majority’s conclusion that neither prong is met only establishes that Boeing’s counterclaims were not compulsory for the typical reasons; it has not affirmatively resolved that Boeing’s counterclaims were permissive, which is the predicate condition for our jurisdiction.

supports that proposition. Indeed, "there is no formalistic test to determine whether suits are logically related." *Burlington N. R.R. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990); *cf. Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 537 (9th Cir. 1995) ("We determine whether a claim arises out of the same transaction or occurrence by analyzing 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues [must] be resolved in one lawsuit.'" (quoting *Pochiro*, 827 F.2d at 1249)). *Mattel* merely restates a tentative doctrinal synthesis suggested by the Fifth Circuit; it does not set forth a comprehensive definition or an absolute rule. *See Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 714–15 (5th Cir. 1970) (origin of this doctrinal synthesis); *see also Brown v. Davenport*, 596 U.S. 118, 141 (2022) ("[T]he language of an opinion is not always to be parsed as though we were dealing with [the] language of a statute." (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979))); *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 35 (2012) ("[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821))).

Finally, the majority's analysis does not persuasively explain why Boeing's counterclaims were not compulsory. Reasoning by analogy to *Mattel* and *Hydranautics*, the majority states that the "factual overlap" between Zunum's claim and Boeing's counterclaims is simply "insufficient" to establish that those claims all arose from the same transaction. *Order* at 14–15. But *Mattel's* analysis is not relevant or helpful here; instead, it stands for the unremarkable proposition that a de minimis factual overlap between claim and counterclaim is per se insufficient to

render the counterclaim compulsory. *See* 705 F.3d at 1110 ("That both Mattel and MGA claimed they stole each other's trade secrets isn't enough to render MGA's counterclaim compulsory. . . . That the same information may have shuttled back and forth between Mattel and MGA [likewise] isn't a sufficient nexus to support a compulsory counterclaim.").

And although *Hydranautics* is a more analogous case, it does not support the majority's suggestion that logical compatibility between a claim and counterclaim—i.e., that both claims could succeed, as happened here when Zunum prevailed on its trade secrets claim and Boeing prevailed on its patent inventorship counterclaims—necessarily demonstrates an insufficient factual overlap between the two claims (or otherwise renders the counterclaim permissive). For instance, we have recognized that a party has a compulsory counterclaim for recoupment when the claim and counterclaim "arose from a common statutory framework or common fund" or from one contract between the parties, even though success on the counterclaim is logically compatible with success on the primary claim. *Cooper*, 131 F.4th at 1009 (first citing *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 975 F.3d 926, 938 (9th Cir. 2020), then citing *In re TLC Hosps., Inc.*, 224 F.3d 1008, 1013 (9th Cir. 2000), and then citing *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1402–03 (9th Cir. 1996)). The principle relied on by the majority therefore cannot be dispositive.

Nonetheless, the outcome of this case is controlled by *Hydranautics*, but for a different reason than that stated by the majority. *See* 70 F.3d at 536–37 (holding that an antitrust claim for predatory patent litigation was not a compulsory counterclaim to the prior suit for patent infringement); *see*

*also Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661, 671 (1944) ("The fact that [an antitrust claim for predatory patent litigation] might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) . . . does not mean that the failure to do so renders the prior judgment res judicata as respects it."). And like *Hydranautics*, two key considerations determine the outcome here.

First, a claim is generally not a compulsory counterclaim "to the original suit which furnishes its predicate."[4] *Hydranautics*, 70 F.3d at 537. This is because when a claim is asserted in judicial proceedings, ordinarily the underlying transaction from which the claim arose has already "been acted out to the end." *Williams*, 1 F.R.D. at 213. Here, as

[4] The majority suggests my reading of *Hydranautics* is incorrect and, in any event, inconsistent with our prior decision in *Pochiro*. *See Order* at 17–19; *Pochiro*, 827 F.2d at 1249–52 (holding that an abuse-of-process claim resting entirely on the alleged fact that Prudential "br[ought] a lawsuit against [Pochiro] for the ulterior purpose of using it as a tool to dissuade persons from doing business with [him]" was a compulsory counterclaim under Arizona law in the lawsuit that furnished its predicate). But the majority's reading of *Hydranautics,* if applied faithfully to the facts of *Pochiro*, would counsel a different result, given the logical compatibility between the claims at issue. *Cf. Pochiro*, 827 F.2d at 1252 ("[A] claim for abuse of process under Arizona law does not require that the prior dispute be resolved in favor of the abuse of process claimant, only that the opposing party has attempted to pervert the judicial process to an improper purpose."). Moreover, the interpretation of state law does not create binding precedent for the interpretation of analogous federal law merely because the court drew from federal precedent as a guide for its decision. *See Cohens*, 19 U.S. at 399 ("If [statements in an opinion] go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision."). But if *Pochiro* provides a controlling interpretation of federal law and is in irreconcilable conflict with *Hydranautics*, then this case should be taken en banc to resolve the conflict.

Boeing acknowledges, the predicate condition for asserting its counterclaims for a declaratory judgment—a substantial controversy between the parties over the inventorship of the ’635 and ’811 patents—did not arise until Zunum filed its complaint. *See Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273–74 (1941) (explaining that allegation of a substantial controversy is necessary to “state[] a cause of action” for a declaratory judgment). Thus, the occurrence from which Boeing’s counterclaims arose is logically disconnected from the set of occurrences that gave rise to Zunum’s trade-secrets claim.

Second, the possibility that both the plaintiff’s claim and the defendant’s counterclaim could be successful often, but not always, indicates that the two claims arise from different transactions. *Cf. Hydranautics*, 70 F.3d at 537 (“This difference in which facts control shows why there may be a significant difference, and there is a significant difference in this case, between the facts which control the patent infringement claim and the facts which control the antitrust claim.”); *Moore*, 270 U.S. at 610 (“So close is the connection between the case sought to be stated in the bill and that set up in the counterclaim, that it only needs the failure of the former to establish a foundation for the latter; . . . .”). And here, there were numerous theoretical pathways for both parties to succeed on their respective claims without producing contradictory rulings. For instance, even if Zunum had shown that it owned trade secrets related to the subject matter of the ’635 and ’811 patents and that Boeing had wrongfully misappropriated those trade secrets, *see Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 942 (Wash. 1999) (listing the elements of trade secret misappropriation under Washington law), Boeing could nonetheless prevail on its patent-inventorship counterclaims by showing that those

trade secrets were not "sufficient to enable [its employees] to construct and successfully operate the invention[s]" described by the '635 and '811 patents, *Brand v. Miller*, 487 F.3d 862, 869–70 (Fed. Cir. 2007) (quoting *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1376 (Fed. Cir. 2004)) (listing the requirements for showing "derivation" of a patented invention).

These factors provide a more compelling explanation for why Boeing's counterclaims were permissive than a quantitative assessment of the factual overlap. This is not to say that the quantity of factual overlap cannot be the determinative factor in a proper case. *See, e.g.*, *Mattel*, 705 F.3d at 1110. But as shown by the Supreme Court's decision in *Moore*, when the defendant's allegedly breaching conduct constituted just "one of the links in the chain" upon which the counterclaim was based, the two claims can still be part of the same transaction notwithstanding a relatively narrow overlap in essential facts. 270 U.S. at 609–10 ("That they are not precisely identical, or that the counterclaim embraces additional allegations . . . does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim."). For these reasons, although I concur in the decision to deny the petition for rehearing, I cannot join the majority's analysis of our jurisdiction.